Cottrell v. The State.

GEORGE COTTRELL, PLAINTIFF IN ERROR, V. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Bastardy:** PRACTICE AND PROCEEDINGS. Proceedings under the bastardy act of 1875 should be conducted in the name of the prosecuting witness, or, if she refuse to prosecute, in the name of the county; but where proceedings are instituted in the name of the state, without objection on that ground until after judgment, this will be a waiver of the objections, the state being a mere trustee for the real party in interest.

2. ———: ———. The proceeding is in the nature of a civil action to enforce the performance of a civil and moral obligation —the support by a father of his child.

3. **Constitutional Law:** SIGNING BILLS. The failure of the presiding officer of the senate to sign a bill, which was afterwards approved by the governor, and which the journal of the senate shows passed the senate by the constitutional majority, does not affect the validity of the act.

ERROR to the district court of Richardson county. Tried before WEAVER, J. The opinion states the case.

*Schoenheit & Thomas,* for plaintiff in error.

1. The defendant was prosecuted for the *crime of bastardy*, and the power of the state, wielded by the district attorney, was brought to bear against him. On behalf of the plaintiff in error we say that there

---

NOTE.—Upon a verdict of guilty in an action of bastardy, the court should adjudge the defendant to be the reputed father of the child. *Aliter*, the order of the court for the support of the child is erroneous. *Spurgeon v. Clemmons*, 6 Neb., 307. ———. A bill originating in the senate was passed by the house with amendments, and returned to the senate, who concurred therein, but the vote on concurrence was not disclosed by the journal. *Held*, that the act was valid. *Hull v. Miller*, 4 Neb., 503. *Commissioners of Leavenworth County v. Higginbotham*, 17 Kan., 74. And see this last case, pp. 75, 76, in support of the third point stated in above syllabus.— REP.

is no such crime as bastardy known to the law. The proceeding under the bastardy act is in no sense a criminal proceeding, but, on the contrary, it is one of a civil nature merely. The object is not to punish the defendant, but only to enforce the discharge of a moral duty. *Carter v. Krise*, 9 Ohio St., 402. *Holmes v. The State*, 2 G. Green, Ia., 501. *Marston v. James*, 11 N. H., 156.

2. We claim that the court erred in permitting the state to prosecute the plaintiff in error as for a crime. He had committed no offense against the state, and the state had no cause of action against him.

3. At common law a father was not bound to support his bastard child. His liability to do so is created entirely by statute. *Perkins v. Mobley*, 4 Ohio St., 668.

4. The act is unconstitutional, having never been signed by the president of the senate. Constitution, 1867, Art. II., sec. 20.

*C. J. Dilworth*, attorney general, *J. P. Maule*, district attorney, and *W. W. Wardell*, for the defendant in error.

MAXWELL, CH. J.

The plaintiff in error was arrested, tried, and found guilty under the provisions of the bastardy act of 1875. The case is brought into this court by petition in error.

The errors assigned are:

*First.* That the court erred in treating the case as a criminal case, and in permitting the same to be prosecuted in the name of the state by the district attorney.

*Second.* Because there is no law in force in the state of Nebraska under which this proceeding could be sustained, and the court erred in not dismissing the case.

*Third.* Because the " act for the maintenance and support of illegitimate children," approved February 25, 1875, is of no validity, not having been signed by the president of the senate.

*Fourth.* Because the complaint sets out no cause of action, either civil or criminal, against the plaintiff in error.

*Fifth.* Because the district court had no jurisdiction.

In *Devinney v. The State,* Wright's Report, 564, the supreme court of Ohio, in a circuit decision, says: " A prosecution in bastardy is only *quasi* criminal, and if brought in the name of the state at all, it should appear to be on the relation of the prosecuting witness. It is more proper to use her name alone." This case seems to have been followed in Ohio under a statute that appears to be similar to our own. An examination of the cases in the reports of that state will show that cases have been prosecuted indiscriminately in the name of the state, or in that of the prosecuting witness or municipality liable for the support of the child. *State v. Smith,* Tappan's R., 143. *State v. Farley,* Wright's Report, 464. *Porter v. The State,* 23 Ohio State, 320. *State v. Morrow,* 2 W. L. M., 308. *State v. Courtney,* 1 Id., 389. *Devinney v. The State,* Wright's Report, 564. In some of these cases, however, the action was upon the recognizance. *Perkins v. Mobley,* 4 Ohio State, 668. *Maxwell v. Campbell,* 8 Id., 265. *Carter v. Krise,* 9 Id., 402. *Musser v. Stewart,* 21 Id., 353. *Roth v. Jacobs,* 21 Id., 646. *Hootman v. Shriner,* 15 Id., 43. *Dailey v. Carson,* 9 Ohio, 149. *Hawes v. Cooksey,* 13 Ohio, 242. It will be seen that a very large proportion of the reported cases have not been prosecuted in the name of the state. And, being essentially a civil action, the better course is to conduct the prosecution in the name of the real party in interest. But in such

a case the state is a mere trustee, and the real party in interest obtains the benefit of the judgment, the object of the action being merely to enforce the discharge of a civil and moral obligation—that of support by a father of his own child. The judgment, therefore, is a bar to another action for that purpose. Had objection been made at the proper time to the form of the action, the court should have caused the real party in interest to be substituted as plaintiff, and the cause then proceeded with in the name of the substituted party, but having failed to do so, the objection is waived.

The second and third assignments of error may be considered together. It is claimed that the " act for the maintenance and support of illegitimate children," approved February 25, 1875 (Laws, 1875, p. 53), is void because not signed by the president of the senate. .An inspection of the original act in the office of the secretary of state shows that the act passed the house of representatives, and was duly attested, and was signed by the speaker of the house. The act is also attested by the secretary of the senate, and is approved by the governor, but is not signed by the president of the senate. Does this omission invalidate the act? Section 20, Art. II. of the Constitution of 1867, provides that: " The presiding officer of each house shall sign publicly, in the presence of the house over which he presides, while the same is in session and capable of transacting business, all bills and joint resolutions passed by the legislature." Section 11 provides that: " On the passage of every bill, in either house, the vote shall be taken by yeas and nays, and entered upon the journal; and no law shall be passed in either house without a concurrence of a majority of all the members elected thereto." An examination of the journal of the senate at that session shows that the bill passed the senate by a vote of twelve in favor of and

one against it.   The signature of a presiding officer to a bill is a mere certificate to the governor that it has passed the requisite number of readings, and been adopted by the constitutional majority of the house over which he presides.   The vote upon the passage of the bill must be determined from the journals of the respective houses.   *Hull v. Miller*, 4 Neb., 503. And where it appears from the journals that a bill has passed by the requisite majority, and has been approved by the governor, the failure of the presiding officer to affix his signature thereto will not invalidate the act, as it will be presumed that the governor had sufficient evidence before him of the passage of the bill at the time he approved the same.   The act, therefore, is of the same validity as though signed by the presiding officer of the senate.

As to the fourth assignment of error, it is sufficient to say that there is no copy of the complaint set out in the bill of exceptions, and in the absence thereof it will be presumed that it stated facts sufficient to constitute a cause of action.

As to the fifth assignment of error, it is sufficient to say that the district court, on appeal, has jurisdiction in this class of cases, it being expressly conferred by the provisions of the act.

In *Musser v. Stewart*, 21 Ohio State, 353, the supreme court of Ohio say: " The statute is in the nature of a police regulation.   Its main object is to furnish maintenance for the child, and indemnity to the public against liability for its support.   The act of the putative father is an offense against the peace and good order of society; and the penalty which the law imposes for his transgression is to enforce upon him the duty of making provision for the maintenance of his illegitimate offspring."

The statute does not aim to punish the putative

father, but merely requires him to perform the duty required of every man who becomes the father of a child—to provide for its support. As it is clearly shown by the testimony that the plaintiff in error is the father of the child in question, the judgment of the district court is clearly right and is affirmed.

JUDGMENT AFFIRMED.