## CHICOT COUNTY ET AL VS. DAVIES.
## BURKS VS. JEFFERSON COUNTY.

1. LEGISLATURE: *Reading of Bills: Suspension of the Rules.*
   Under the Constitution of 1868, bills might be read by title under suspension of the rules. And where a bill was read by title and passed, and the journal is silent as to the suspension of the rules, this Court, to uphold the act, will presume that the rules were suspended; that Constitution not requiring that the journals affirmatively show the suspension.

2. SAME: *Same.*
   There was no constitutional objection to the first reading of a bill in the Senate on the same day of its final passage in the House.

Chicot County et al v. Davies. Burks v. Jefferson County.

3. SAME: *The journal as evidence of the passage of an act.*
   When the Constitution requires certain formal rules to be complied with by the Legislature before a bill become a law, and the appropriate office of the journal is to record the successive steps of legislative action, such journal will be sufficient evidence to overturn an enrolled bill which is in conflict with it; but where the Constitution does not require a certain matter (*e. g.* an amendment) to be entered upon the journal, but the journal shows that the original bill was amended, and is silent as to the rescission of the amendment, and the enrolled bill contains no amendment, this Court will presume that the amendment was rescinded.

4. SAME: *Evidence of the passage of a bill.*
   Not only the enrolled bill, but the Legislative journals, and records and files of the office of Secretary of State, may be looked to to ascertain whether the act was duly passed.

5. SAME: *Evidence: Variance between the manuscript and printed journal.*
   Where there is a variance between the manuscript and printed minutes of legislative proceedings, the manuscript will prevail.

6. SAME: *Evidence. Presumption from silence of journal.*
   An original bill in the House of Representatives to authorize county subscriptions for stock in railroads, provided that the County Court should submit the question of subscription to a popular vote upon the joint application of the President and Directors of the company *and* one hundred of the voters of the county. The manuscript journal of the House shows that the bill was amended by substituting the word "or" for "and," so as to authorize a popular vote upon the application of either the company *or* of one hundred voters. The entry in the printed journal as to this amendment is insensible, and neither journal said anything more of the amendment. The bill was passed and transmitted to the Senate, and there passed and was sent to the Governor. The enrolled bill as signed by the Governor has the word "and" in place of "or." In a contention that the bill signed by the Governor and enrolled, is not the same bill passed by the House and Senate, HELD: That as the Constitution did not require amendments of bills to be entered upon the journals, this Court, to uphold the act, will presume that the House receded from its amendment, and hold that the enrolled act was the one passed.

Chicot County et al v. Davies. Burks v. Jefferson County.

APPEALS from *Chicot* and *Jefferson* Circuits.

Hon. T. F. SORRELLS, Judge of Chicot Circuit Court.

Hon. X. J. PINDALL, Judge of Jefferson Circuit Court.

### STATEMENT.

These cases were proceedings by *certiorari* to quash a levy of taxes by the respective County Courts of Chicot and Jefferson counties to pay the interest on certain railroad bonds which had been issued by them in pursuance of the act of the Legislature of July 23, 1868, authorizing counties to subscribe stock in rail-roads and to issue bonds therefor. The ground of the proceedings was that the act was not constitutionally passed, and the bonds were therefore issued without authority. The alleged irregularities in the passage of the act are stated in the opinion. In the first case the levy was quashed by the Circuit Court and the county appealed. In the second, the writ was dismissed and the plaintiff appealed.

*John McLure* for Davies and Burks.

1. The *bill* was not read *three* times in the House, but on the third reading was only read by *title*. *Art. V., sec's.* 21 *and* 22; 35 *N. Y.*, 452; 53 *Barb.*, 71; 81 *Ill.* 288; 77 *Ib.* 11. *Nor were the rules suspended.* The language is that the bill "was by unanimous consent, read third time *by title* and put on its final passage." Comments on *Sec.* 18, *Art.* 4, *Const.* 1836; *sec.* 18, *Art.* 4, *Const.* 1864; *sec.* 21, *Art. V. Const.* 1868; *sec.* 22, *Art. V. Const.* 1874, and *English v. Oliver*, 28 *Ark.*, 317.

2. The bill was read three times in the Senate on *the same day it passed the House*, without a suspension of the rules as required by the Constitution. *Sec.* 21, *Art. V., Const.* 1868; 31 *Ark.*, 710. The bill must be read three times, on different days, *in each house.* It was read *in*

*both houses on one and the same day* without a suspension of the rules.

3. The bill which passed the two houses of the General Assembly was not presented to and approved by the Governor, but a wholly different bill was approved by the Governor than that which passed the two houses.

*Sec's.* 21 *and* 35, *Art. V. Const.* '68 require that: 1. The bill must pass the House; 2d. The Senate, and 3d. Must be approved by the Governor. Cites. *Kent* (*Vol.* 1, *p.* 446); *Pomery, Const. Law, sec's.* 174-5; *sec.* 1, *Art. V. Const.* '68; *sec.* 35, *Ib.*; 16 *Mich.*, 157; 35 *Ill.*, 135; 2 *South Car.*, 150: 50 *Miss.*, 68; 43 *Ala.*, 723; 48 *Ib.*, 115; *Cooley, Const. Lim.*, 135; 19 *Ill.*, 327; 41 *Md.*, 459; 42 *Md.*, 203; 18 *O. St.*, 461. This Court will take judicial notice of *the legislative journals*, &c. 19 *Ark.*, 250; 27 *Ib.*, 267; 28 *Ib.* 317; 31 *Ib.*, 710; 32 *Ib.* 496; 33 *Ib.*, 17; 32 *Ib.*, 417; 34 *Ib.* 263; *sec.* 2728, *Gantt's Dig., and* 2731; 8 *N. Y.*, 317; 45 *Ill.*, 124. These cases also show that the *original* bill may be introduced *as evidence.*

Courts *take judicial notice* of legislative records, and *inspect* same. *Ubi sup*; 50 *Miss.*, 68; 43 *Ala.*, 721; 48 *Ala.*, 115; 2 *S. C.*, 150; 6 *Wall*, 499; 19 *Ark.*, 250, *and sup.*; 34 *Ark.*, 283; 2 *Cal.*, 168; 2 *Minn.*, 336; 35 *Ill.*, 121.

Hence the act was not constitutionally passed.

*U. M. and G. B. Rose, amici curiae.*

1. The first objection of counsel for Burks & Davies cannot be sustained, because it will be presumed that the rules were suspended.

Except in cases where the Constitution expressly requires the action of the Legislature to be shown by the journals, it will be presumed that the constitutional requirements have been complied with, etc. 32 *Ark.*, 516; 27 *Ark.*, 278; 28 *Ib.*, 320; 11 *Ind.*, 433; 42 *Texas*, 641.

2. The second is even less tenable. Nothing could be gained by having a day intervene. 35 *Ark.*, 243.

3. The Courts cannnot go behind the journals to examine the original draft of a bill. As to the *contents*, the enrolled bill is final. 10 *Nev.*, 176; also *XXI Am. Rep.* 721; 32 *N. J. L.*, 29 and 5 *Am. L. Reg.*, *N. S.* 679; 23 *Mo.*, 353; 30 *Ind.*, 514; 12 *Iowa*, 2; 5 *Iowa*, 509; 20 *Con.*, 8; 64 *N. C.*, 244; 23 *La. Ann.*, 743 and 8 *Am. Rep.*, 602; 30 *Cal.*, 253; 43 *Ib.*, 560; *Thompson's case, Vol.* 9 *Op. Att'y. Gen.*, 1; 1 *Denio*, 9; 23 *Wend.*, 164; 25 *Wend.*, 610; 33 *N. Y.* 269; 54 *N. Y.*, 276; 32 *Miss.*, 650; 40 *Ib.*, 269; 13 *Md.*, 392; 32 *Md.*, 471; *Wharton on Evidence, Sec.* 290; *Abbott's Trial Ev.*, 22, etc., etc. In all these, and others, *there is not a single case which authorizes the courts to examine the original draft of the bill* to show that the *contents* of an act as passed is different from the contents of the act as approved by the Governor.

The enrolled statutes duly certified and deposited with the Secretary of State are the highest and most sacred of records. They import absolute verity.

Mechanical errors will not annul legislative acts. 34 *Ark.*, 263; 77 *Ill.*, 12; 103 *W. S.*, 683; 74 *Ill.*, 361; 16 *Mich.* 254; 46 *Iowa* 670.

If necessary it would be the duty of the Court, in order to sustain the act, to presume that the House receded from its amendment. See the Arkansas decisions cited and 3 *Ohio St.*, 475; 25 *Ill.*, 182, *etc.*

4. Parts of an act, about which there are doubts, may be eliminated and the rest allowed to stand. *Cooley, Const. Lim., p.* 148; *Sedgwick on Constitution*, 2d *Ed.*, 528 *note.*

*Compton, Battle & Compton. Amici curiae.*

Argue elaborately the fourth proposition stated by Messrs. Rose, *Sup.*, and cites *Cooley Const. Lim.*, 177; 7

*Cal.*, 97; 3 *R. I.*, 33; 29 *Iowa*, 398; 25 *Cal.*, 373; 2 *Black'f.*, 10; 34 *Miss.* 227; 37 *Ark.*, 356, and many others.

[NOTE.—As the case turned on the other points we refrain from publishing more of the learned counsels' argument or authorities.]

Hons. *John F. Dillon* and *Charles P. Redmond, Amici curiae*, argue elaborately all the points in the case above stated in favor of the validity of the act, and others, · and cite many valuable authorities, but as it would make the abstract too lengthy, their arguments are omitted.

SMITH, J.  The sole question which we are called upon to decide is, whether the act of July 23, 1868, authorizing counties to subscribe stock in railroads, was duly and constitutionally passed.

The history of the law, as disclosed by the legislative journals, is as follows:  The bill was introduced into the House of Representatives on July 17, 1868, and on July 20th it was read the first time.  The rules were then suspended and the bill was read a second time.  Several amendments were adopted, all of which were for the mere purpose of filling blanks, except one.

On July 21st the bill was, by unanimous consent, read the third·time by title and passed by a vote of 45 to 1; the yeas and·nays being entered on the journal.  On the same day the bill was transmitted to the Senate, where it received a first reading.  Then, under a suspension of the rules, it was read the second and third times and passed by a unanimous vote; the names of those voting in the affirmative and of absentees being noted on the journal.  The bill was afterwards presented to and approved by the Governor, was duly enrolled and deposited among the archives of. the State, was published as a law and has been recognized and acted upon by·all the

departments of the government ever since. Under its authority, it is said, more than $1,000,000 of bonds have been issued by the various counties.

1. LEGIS-LATURE : Reading of bills. Suspension of rules.    I. It is objected that the bill was not read three times in the House, as required by *Sec.* 21, *Art. V Constitution of* 1868, because the journal shows that the third reading was by title only.

The several stages through which a bill passed in Parliament before it became a law were established by usage.

"Before the invention of printing, and when the art of reading was unknown to three-fourths of the deputies of the nation, to supply this deficiency it was directed that every bill should be read three times in the House. At the present day these three readings are purely nominal; the clerk confines himself to reading the title and the first words." *Bentham Pol. Tac., II,* 353.

The Constitution provides that every bill should be read three times on different days in each House before the final passage thereof, unless two-thirds of the House where the same is pending, should dispense with the rules.

In *Smithee v. Garth,* 33 *Ark.,* 17, the third reading of the bill in the House and the first reading in the Senate were by title only; and although the act was held invalid, it was not for this cause, but it was intimated that in such cases the journal should show a suspension of the rules. The inference is clear that, in the opinion of the Court, it was competent for the house in which a bill was pending, by a vote of the requisite majority, not only to order a second or third reading on the same day, but also to dispense with the reading of the bill by sections.

In *English v. Oliver,* 28 *Ark.,* 317, a law was assailed because the bill had not been read three times on differ-

Chicot County et al v. Davies. Burks v. Jefferson County.

ent days in the House of Representatives, nor had the rules been suspended. The journal failed to show that it had been read a first and second time, but did show a third reading by title. The Court sustained the validity of the act upon the ground that a third reading necessarily implied two previous readings. If the proposition now contended for were true, the bill had never been read at all in the House.

In *Worthen v. Badgett*, 32 *Ark.*, 496, the last two readings in the Senate of the bill for the act of April 29, 1873, were by title; and yet the act was sustained.

So that it is no longer an open question that, under the Constitution of 1868, bills might be read by title under a suspension of the rules. The rule is probably different· under the Constitution of 1874, which requires bills to be read at length. *Art. V.. sec.* 22.

II.  But it is further contended that, supposing the bill might have been read by title under a suspension of the rules, yet the rules were never actually suspended.

When suspension of rules presumed.

As the greater contains the less, unanimous consent is probably equivalent to a suspension of the rules, or implies it. But if this be not so, the Constitution, under which this legislation was had, did not require the journal affirmatively to show a suspension of the rules. And for the purpose of upholding a law which appears upon the statute book, we will presume this was done. *Vinsant v. Knox*, 27 *Ark.*, 278; *English v. Oliver*, 28 *Id.*, 320; *Worthen v. Badgett*, 32 *Id.* 516.

III.  A third objection was, that the bill was read for the first time in the Senate on the same day that it passed the House, without a suspension of the rules.

2. Bill might be read in Senate on the same day it passed the House.

The Constitution does not mean that a bill can not be read in both houses on the same day, unless the rules are suspended. The design of all such restrictions is to pre-

vent hasty and improvident legislation by giving members time to inform themselves about measures pending before them. Nothing could be gained by having a day to intervene between the passage of an act in one house and its first reading. in the other. It would have passed from the consideration of ·the house in which it originated and it would not be before the other house at all until it had been once read.

Such a construction presupposes a knowledge by the members of either house of the proceedings in the other, ' which, in the nature of things, it is not to be expected that they should possess. In the matter · of the several readings, each house acts independently of, and without reference to, the other. But the point has perhaps already been settled by *State v. Crawford*, 35 *Ark.*, 237, where the bill, it seems, was pending in both houses on the same day.

3. The journal as evidence of the finding of a bill.

IV. The fourth proposition is, that the bill, approved by the Governor and enrolled in the office of the Secretary of State, differs from the bill which passed the General Assembly. The alleged variance consists in this: the original draft of the bill and the bill as it was enrolled and approved by the Governor provided that the County Court should submit the question of subscription to a popular vote upon the joint application of the President and Directors of the rail-road company *and* one hundred voters of the county. It is claimed that an amendment in the house, substituting "or" for "and," authorized the election to be ordered upon the petition either of the railroad company *or* of one hundred voters. This variance can be detected only by a comparison of the original draft and the journal of the House with the enrolled act.

It is contended, in support of the act, that the enroll-ment is conclusive and that the Courts can not go be-hind it to the journals or the original draft for the pur-pose of examining into the contents of a bill, or the pas-sage of a law.

This is certainly the rule in England. The oldest case on the subject which we have been able to find is *King v. Arundel, Hobart's Rep.*, 109, decided in 1616. There it was sought to get rid of a private act of Parliament, which had the King's assent and the great seal, because it was not the act of the Lords and Commons. At the trial in the Court of Chancery, it was proposed to show by the journal of the Lords that a proviso had been pass-ed as a part of the bill. The question thus arose on the admissibility of the journal to impeach the act. The Court examined the journals and could not find that the act had been passed by both houses and said: "But now supposing that the journal were every way full and per-fect, yet it hath no power to satisfy, destroy or weaken the act, which, being a high record, must be tried only by itself, *teste me ipso*. Now journals are no records, but remembrances for forms of proceedings to the record; they are not of necessity, neither have they always been. They are like the dockets of the prothonotaries, or the particular to the King's patents."

And so it was held that the Courts could not go be-hind the authentication of the act.

This case, it is believed, has never been departed from in England and it has been followed by the Courts of last resort in many of the United States. *Eld. v. Gor-ham*, 20 *Conn.*, 8; *Green v. Weller*, 32 *Miss.*, 650; *Swan v. Buck*, 40 *Miss.*, 269; *Pacific R. Co. v. Governor*, 23 *Mo.*, 362; *Duncombe v. Prindle*, 12 *Iowa*, 1; *State v. Young*, 32

14

*N. J. Law*, 29; *Speer v. Plank Road Co.*, 22 *Penn. St.*, 376; *Evans v. Browne*, 30 *Ind.*, 514; *Sherman v. Story*, 30 *Cal.*, 253; *State v. Burt*, 43 *Cal.*, 560; *Brodnax v. Groom*, 64 *N. C.*, 244; *People v. Devlin*, 33 *N. Y.*, 269; *People v. Commissioners, &c.*, 54 *N. Y.*, 276; *Fouke v. Fleming*, 13 *Md.*, 412; *Mayor v. Harwood*, 32 *Md.*, 471; *State v. Swift*, 10 *Nev.*, 176; *Louisiana State Lottery v. Richoux*, 23 *La., Ann.*, 743.

But in some of these States, there have been oscillations of opinion on this vexed question, the effect, at least in part, of changes in the organic law. *Brady v. West*, 50 *Miss.*, 68; *State v. McBride*, 4 *Mo.*, 303; *Bradley v. West*, 60 *Mo.*, 33; *State v. Mead*, 71 *Mo.*, 266; *People v. Purdy*, 2 *Hill*, 31, and 4 *Hill*, 384; *DeBow v. People*, 1 *Denio*, 9; *Commercial Bank v. Sparrow*, 2 *Den.*, 97; *Thomas v. Dakin*, 22 *Wend.*, 9; *Warner v. Beers*, 23 *Wend.*, 103; *Hunt v. Van Alstyne*, 25 *Wend.*, 605; *People v. Supervisors*, 8 *N. Y.*, 317; *Berry v. Baltimore R. Co.*, 41 *Md.*, 446; *Legg v. Annapolis*, 42 *Md.*, 203; *Southworth Bank v. Commonwealth*, 26 *Pa. St.*, 446.

The people of England have no written constitution defining and limiting the powers of their government. The Parliament being supreme, there can be no such thing as the passage of laws in an unconstitutional manner.

And the English rule is the safer in the absence of constitutional restraints upon the legislature in the mode of enacting laws.   But to apply it in States whose constitutions contain minute directions about the formalities to be observed in the passage of laws, is to nullify provisions which were intended as safeguards against reckless and vicious legislation, however illusory such protection may prove to be.   Thus the Constitution of 1868 ordains:

" Each House shall keep a journal of its proceedings

and publish the same," etc. "No bill * * * shall become a law without the concurrence of a majority of all the members voting. On the final passage of all bills the vote shall be taken by yeas and nays and entered on the journal." "No act shall embrace more than one subject, which shall be embraced in its title." "No new bill shall be introduced into either House during the last three days of the session, without the unanimous consent of the House in which it originated." *Art. V, Sections* 16, 21, 22, 24.

Now, since the fundamental law declared that certain formal rules should be complied with before a bill became a law, and the appropriate office of the journal is to record the successive steps of legislative action, the inference is irresistible that this journal is evidence. Accordingly, in a majority of the States, where these fundamental requirements have been introduced, the possibility of overturning the statute roll by the journal exists. *Sprangler. v. Jacoby,* 14 *Ill.,* 297 ; *Prescott v. Canal Co.,* 19 *Id.,* 324 ; *People v. Stearns,* 35 *Id.* 121; *Ryan v. Lynch,* 68 *Id.,* 160 ; *Miller v. Goodwin,* 70 *Id.,* 659 ; *South Ottawa v. Perkins,* 94 *U. S.,* 260; *Trustees v. McCoughey,* 2 *Ohio St.,* 152 ; *Fordyce v. Goodman,* 20 *Id.,* 1 ; *Jones v. Hutchison,* 43 *Ala.,* 721 ; *Mondy v. State,* 48 *Ala.,* 115; *Osborne v. Staley,* 5 *W. Va.,* 85 ; *Opinions of the Justices,* 35 *N. H.,* 579 *and* 52 *N. H.,* 622 ; *State v. Platt,* 2 *S. C.,* 150 ; *Green v. Graves,* 1 *Doug.,* (*Mich.*) 351 ; *Hurlburt v. Britain,* 2 *Doug.,* 191; *People v. Mahaney,* 13 *Mich.* 481; *Supervisors v. Heenan,* 2 *Minn.,* 330; *Commissioners v. Higginbotham,* 17 *Kas.,* 62; *Hall v. Miller,* 4 *Neb.,* 505 ; *Cottrell v. State,* 9 *Neb.,* 125.

*Journal is evidence.*

This last has always been the rule in this State. *Burr v. Ross,* 19 *Ark.,* 250 ; *English v. Oliver,* 28 *Id.,* 321; *Knox v. Vinsant,* 27 *Id.,* 266 ; *State v. L. R., M. R. & T. Ry. Co.,*

31 *Id.*, 716; *Worthen v. Badgett*, 32 *Id.*, 516; *Smithee v. Garth*, 33 *Id.*, 17; *State v. Crawford*, 35 *Id.*, 237.

But, at all events, it is urged that we cannot go behind the journals for the purpose of examining the draft of the bill. In *Loften v. Watson*, 32 *Ark.*, 414 and in *Haney v. State*, 34 *Ark.*, 263, this court did examine the original bills introduced into the Legislature.

The true rule upon this subject was enunciated in *Gardner v. Collector*, 6 *Wall.*, 499 : "We are of opinion therefore, on principle as well as authority, that whenever a question arises in a court of law of the existence of a statute, or of the time when a statute took effect, or of the precise terms of a statute, the Judges who are called upon to decide have a right to resort to any source of information which, in its nature, is capable of conveying to the judicial mind a clear and satisfactory answer to such question; always seeking first for that which, in its nature, is most appropriate, unless the positive law has enacted a different rule."

In that case only the date of the President's approval of an Act of congress was in question. In *Scott v. Clark Co.*, 34 *Ark.*, 283, this rule was followed by this court.

4. SAME: Evidence of the passage of a bill.    The enrollment is a solemn record, and the existence of the act is to be tried by the record, and is not to depend on the uncertainty of parol proof, or upon anything extrinsic to the law and the authenticated recorded proceedings in passing it. But the enrolled act is not the only record in the case. The inquiry may be carried back to the legislative journals and the records and files of the office of the Secretary of State. *In the Matter of Wellman*, 20 *Vt.*, 656.

The original draft of the bill comes before us certified by its proper custodian. *Sec. 2731 of Gantt's Digest* provides :

" The Secretary of State shall receive from the Secretary of the Senate and the Clerk of the House of Repretatives all the records, books, papers and rolls of the General Assembly and file the same as records of his office."

Section 2450: " Copies of any act, resolution or order of the General Assembly, commissions or other official acts of the Governor, and of all rolls, records, documents, papers, bonds and recognizances deposited in the office of the Secretary of State, and required by law there to be kept, certified under his hand and seal of office, shall be received in evidence in the same manner and with like effect as the original."

Sec. 2 of the original draft of the bill read thus: "Whenever the President and Directors of any such railroad shall make application to the County Court of any county for a subscription by such county to its stock, specifying the amount to be subscribed and the conditions of such subscription, and . . . . of the voters of the county shall petition the Court for such purpose," &c.

The only word on the tenth line was the word "and;" the remainder of the line being blank, which was afterwards filled by an amendment inserting the words "one hundred" before the words "of the voters." It also appears from the manuscript journal that the House adopted this amendment: "Sec. 2, line 10, Add the word 'or' instead of 'and.'" The published journal at the same place in the proceedings, reads: ''Annex the word 'or.'" This last reading is insensible, as it does not show that 'and' was stricken out and there is nothing on line 10 to which 'or' can with any propriety be annexed. However, the manuscript minutes are a higher grade of evidence than the printed copies and must control. They show with reasonable certainty that the House amended the bill by striking out 'and' and inserting 'or.'

5. Variance between the manu script and printed journal; manuscript prevails.

Does it follow that the bill which passed the General Assembly was not the same bill which was presented to and signed by the Governor?

In *Cooley's Constitutional Limitations*, 135, it is said: "Each house keeps a journal of its proceedings, which is a public record and of which the Courts are at liberty to take judicial notice. If it should appear that any act did not receive the requisite majority, or that in respect to it the legislature did not follow any requirement of the Constitution, or that in any other respect the act was not constitutionally adopted, the Courts may act upon this evidence and adjudge the statute void. But whenever it is acting in the apparent performance of legal functions, every reasonable presumption is to be made in favor of the action of the legislative body; it will not be presumed in any case, from the mere silence of the journals, that either house has exceeded its authority, or disregarded a constitutional requirement in the passage of legislative acts, unless where the Constitution has expressly required the journals to show the action taken, as, for instance, where it requires the yeas and nays to be entered."

This presumption of the due passage of laws was acted upon in regard to the three readings of a bill in *Vinsant v. Knox*, 27 *Ark.*, 278, which has been followed in several other cases, as we have seen.

6. Presumption when constitution does not require proceedings to be entered on journals. Now the Constitution of 1868 did not require amendments to bills to be entered on the journals. Consequently, in order to uphold the act, we will presume that the House receded from its amendment substituting 'or' for 'and.'

Equally liberal presumptions have been indulged in by other Courts. *Blessing v. Galveston*, 42 *Tex.*, 641; *Miller v. State*, 3 *Ohio St.*, 475; *McCullough v. State*, 11 *Ind.*, 424;

# NOVEMBER TERM, 1882.     215

Chicot County et al v. Davies. Burks v. Jefferson County.

*Supervisors v. People,* 25 *Ill.,* 182; *Commissioners v. Higginbotham,* 17 *Kas.,* 62.

While the journals furnish evidence of legislative proceedings, so far as they go, yet Courts are not bound to hold that nothing was done except what appears therein. Their silence is conclusive only in those matters where the Constitution requires them affirmatively to show the action taken.

<div style="float:right">Journals when conclusive.</div>

It is notorious that these journals are loosely kept and their entries often unintelligible; that they are constructed out of hasty memoranda made in the pressure of business and amid the distractions of a numerous assembly; that the reading of them each morning is frequently dispensed with and there is not a single guaranty of their accuracy or their truth, which is not in practice usually ignored. Nobody vouches for them and upon the final passage of a bill, they are not searched to know whether they contain enough to insure the law's validity.

On their value as evidence see 13 *Central Law, Jour.,* 181.

The enrolled statute, on the contrary, has many guaranties for its correctness. It is enrolled under the supervision of committees of both houses, composed of members who are conversant with the proceedings of their respective bodies, and whose duty it is to compare it with the engrossed bill, the original draft and the journals. We believe also that it has been the invariable practice in this State for the President of the Senate and the Speaker of the House to sign the same. It is then laid before the Governor, and if he approves it, is deposited with the Secretary of State and becomes a high and sacred record.

To make all legislation ultimately depend on the fidelity with which a journal clerk has made his entries, is,

in the expressive language of Judge Black, in *Thompson's Case*, 9 *Opinions of Attorneys General*, 1, to render the laws as uncertain as the terms of a horse trade. We fear to turn loose a principle which might devour the whole statute-book.

The judgment of the Chicot Circuit Court, quashing the levy of the County Court to pay interest on the bonds issued under this act, is reversed and the cause remanded with directions to dismiss the petition for the writ of *certiorari*. And the judgment of the Jefferson Circuit Court, denying the prayer for said writ, is affirmed.