WYATT P. HUTCHINSON, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. Trial: CHALLENGE TO JURORS. It is not error for a trial court to sustain a challenge to a juror who testifies, upon examination as to his competency, that he resided in the neighborhood where one of the parties resided and had heard a great deal of talk about the case, that he was not free from bias, and that he thought this condition of his mind would influence him in his verdict.

2. ———: ———. Unfriendly feeling toward an attorney engaged in a trial is not sufficient ground for challenge of a juror for cause, he being competent in all other respects, when it is shown by his testimony that he could render a fair and impartial verdict uninfluenced by such feeling.

3. Bastardy: TRIAL: EVIDENCE. When in a prosecution under the provisions of chapter 37 of the Compiled Statutes of 1885, entitled "illegitimate children," the prosecutrix being called as a witness takes with her to the witness stand the child, the paternity of whom is in question, said child being only about seven months old, it is not error for the trial court to refuse to order the child to be removed, there being no reference made to it during the trial or argument, and no comparison being made between it and the alleged father.

4. ———: ———: PLEA OF REPUTED FATHER. When a person charged with being the father of an illegitimate child is placed upon trial in the district court, and through inadvertence a plea to the complaint is not taken until after the jury is impaneled and a plea of not guilty is then entered, such omission to enter the plea before the impaneling of the jury would be an irregularity, but without prejudice, and a new trial will not be granted for that reason.

5. ———: PLEADINGS. In a prosecution under chapter 37, Compiled Statutes of 1885, entitled "illegitimate children," no pleadings are necessary in the district court except those specified in the act.

6. Evidence: EXPERT WITNESSES: CROSS-EXAMINATION. Where a witness is examined in the trial of a cause as an expert, and testifies as to his opinions upon scientific questions involved in his profession, it is competent upon cross-examination to inquire as to the extent of his knowledge and his familiarity with the accredited standard authors of his profession.

7. Error Without Prejudice. A judgment will not be reversed for errors occurring at the trial, unless such errors are to the prejudice of the party complaining.

8. Verdict. A judgment will not be reversed upon the ground that the verdict is against the weight of evidence where the testimony is conflicting, if there is sufficient testimony to sustain the verdict.

ERROR to the district court for Cass county. Tried below before POUND, J.

*Crites & Ramsey*, for plaintiff in error, on presence of child at the trial, cited: *Hanawalt v. State*, 24 N. W. R., 489. *Youny v. Makepeace*, 103 Mass., 50. On arraignment and plea, cited: *Aylesworth v. State*, 65 Ill., 301. *Greater v. State*, 54 Ind., 159. *Grigg v. People*, 31 Mich., 471. On opinion of expert witnesses, cited: *Stilling v. Thorp*, 54 Wis., 528. *Com. v. Sturtivant*, 117 Mass., 130.

*Jesse B. Strode, District Attorney*, for the state, cited: *State v. Weber*, 22 Mo., 321. *State v. Cassady*, 12 Kan., 550.

REESE, J.

This was a proceeding against plaintiff in error under the bastardy law of the state. The trial in the district court resulted in a verdict of guilty and judgment thereon in the usual form.

The errors assigned in the brief of plaintiff in error will be examined in the order in which they occur therein.

The first contention is, that " the court erred in sustaining a challenge for cause of the defendant in error to the juror William Cole." The *voir dire* examination of this juror disclosed the fact that he had lived in the neighborhood where plaintiff in error resided; that he knew him and had heard a great deal of talk about the case; that he did not know that he had any opinion as to who should prevail in the suit; that he could not say that his mind was entirely free from bias or prejudice in the case; that he rather thought that the condition of his mind in that respect would have some influence in his finding a verdict, and that his mind was not entirely free from some bias or prejudice. The answers of the juror were no doubt made in candor, and correctly portrayed the condition of his mind. This showed that he was not impartial and that his mind was not free from bias. The court did not err in sustaining the challenge.

The next is, that the court erred in overruling a challenge made by plaintiff in error to A. B. Taylor, a proposed juror. His examination shows that he was not acquainted with either of the parties to the suit, and that he had no opinion as to which party should prevail, and that he did not feel any bias in his mind one way or the other with reference to the case. He was then asked by counsel for plaintiff in error whether he had any prejudice against the counsel for plaintiff in error. His answer was that he had not. He subsequently stated in answer to the attorney that he "did not particularly like him as a man," but that not-withstanding any difficulty he might have had with the attorneys, he thought he could render a fair and impartial verdict, unbiased by anything that had transpired. He was asked whether or not he had made threats of violence against the attorney and whether he had a perfectly friendly feeling toward him in the case. To these two questions objections were made by counsel for defendant in error, which were sustained and which ruling is now assigned for error. Assuming for the purposes of the case that the en-quiry was entirely legitimate, we cannot see that the juror was incompetent to sit in the case. He testified in substance that while he did not particularly like the attorney as a man, yet this personal feeling would not prevent him from rendering a fair and impartial verdict in the case. As to whether he felt "perfectly friendly to counsel" as an attor-ney in the case, or whether he had "at one time or another" made threats of personal violence, were not material matters of inquiry. But we are not aware of any law which would render the juror incompetent by reason of an aversion to counsel employed in the case on trial and none has been cited. We cannot hold that the ruling was erroneous.

3d. "The court erred in overruling the objection of plaintiff in error to the complaining witness bringing her child in view of the jury while testifying." Upon this point the record shows that the complaining witness was

called, and being about to take the witness stand with the child in question in her arms, counsel for plaintiff in error objected " to the complaining witness bringing her child before the jury.    Overruled and exception, and said child was brought into plain view of the jury and kept there while complaining witness gave her testimony."    As to whether anything was said about the child during the trial or not, the record is entirely silent, except that she was its mother and plaintiff was its father.    It was conceded on the argument in this court that no reference was made to it either during the introduction of the testimony or argument of the case by way of comparison to plaintiff in error, and nothing is shown by which it appears that any conclusion was drawn or sought to be drawn from the features or appearance of the child.    It must be apparent to any mind that the mere presence of the child could have no prejudicial effect upon the rights of plaintiff in error.    A number of authorities are cited which hold that it is improper to introduce or present a child to a jury for the purpose of permitting the jury to draw conclusions as to its paternity from a supposed resemblance to the alleged father, unless by a difference in color or some other marked characteristic the resemblance or want thereof can be clearly shown.    But that is not this case.    There was nothing claimed by defendant in error of the kind suggested.    The only thing objected to was the *presence* of the child. Whether the attention of the jury would have been called to its presence had it not been done by plaintiff in error, is, of course, a matter of surmise only; but as the age of the child was only about seven months and nothing was claimed or said as to any resemblance, it is clear the case does not fall within the rule laid down by the cases cited.

    4th.    Section 5 of chapter 37 of the Compiled Statutes of 1885, provides in substance that when the party charged with being the father of an illegitimate child is held upon such charge to answer thereto before the district court,

pleads not guilty to the charge before the district court to which he is recognized, the court shall order the issue to be tried by a jury. In the case at bar the jury was impaneled on Saturday evening, when the court was adjourned until the next Monday. At that time the parties and all the jurors appeared in court for the purpose of proceeding with the trial. The complaining witness was sworn and took the witness stand. Plaintiff in error then objected to any evidence being given in the case, for the reason that no issues were formed by plea or otherwise, no plea of guilty or not guilty having been entered. Whereupon the court required plaintiff in error to plead to the charge, whether guilty or not guilty. Saving to himself the .objection and exception to the order of the court, he entered a plea of not guilty and the trial proceeded. It is claimed that this was an irregularity amounting to a mistrial. A number of authorities are cited, and with which the reports of criminal trials abound, to the effect that a trial in a criminal cause without a plea to the indictment, information, or complaint is a mistrial, in fact, no trial of an issue at all, and that such a proceeding is simply nugatory. But without stopping here to inquire what the effect of such a proceeding in a case of this kind would be, it being a *civil* action and not a criminal one (*Cottrell v. The State*, 9 Neb., 125; *Jones v. The State*, 14 Id., 210), we do not hesitate to hold that the irregularity spoken of was without any prejudice to the rights of plaintiff in error; and the judgment could not for that reason be reversed. Had the trial pro- ceeded to a verdict without a plea having been entered, or had the court refused to reswear the jury, if requested by plaintiff in error, another question would have been presented, but such was not the case.

That the proceeding was irregular cannot be doubted, but that it was prejudicial, and that plaintiff in error was deprived of any substantial right cannot be maintained.

The fifth objection, that the court erred in refusing to

direct the cause to be tried upon pleadings—petition, answer, etc.—as in civil cases, is not presented by the record, and if it were it could hardly be contended for in view of the special provisions provided for in chapter 37, Compiled Statutes of 1885, notwithstanding the fact that proceedings of this kind are civil and not criminal as decided in *Cottrell v. The State, supra.*

6th.   It is next contended that the court erred in overruling the objection of plaintiff in error to certain questions propounded to Dr. A. L. Root by defendant in error, upon cross-examination.   It was alleged by the prosecutrix that the intercourse which resulted in the birth of the child consisted of a single act of copulation had by force and against her consent and at the period of the menstrual flow, and that the time of gestation was extended.   Plaintiff in error sought to show by this witness, by hypothetical questions as well as by his own experience, that the theory of the prosecution was wrong.   That pregnancy would not probably result from a single act of intercourse under the circumstances named, that being the first and only such act of the prosecutrix.   The witness was carefully and skillfully examined upon these several questions and with the purpose, perhaps, of confining him to his own experience and observations.   Upon the cross-examination the following occurred:

Q.   I will ask you to state, doctor, if the testimony that you have given in reference to a woman becoming pregnant in case of rape or when sexual intercourse is had by force, if the testimony which you have given is not based upon medical authorities rather than upon your own experience.

A.   Yes, the testimony is all based upon medical authorities.

Q.   I will ask you to state what the medical authorities hold upon that question now.

Objected to as incompetent, immaterial, and irrelevant,

and not proper cross-examination.   Overruled and excep-
tion.

It is insisted that no ground for this question was laid
in the examination-in-chief, and that the testimony was not
the opinion of the witness but that of the medical authori-
ties.   We think there was no error in this ruling of the
court.   Aside from the fact that the testimony was given in
chief upon the teachings of medical authorities to a great
extent, we think the proper and legitimate scope of cross-
examination would permit the interrogatory.   If the wit-
ness had been testifying from his experience and observa-
tion from a long course of practice, it was yet proper, for
the purpose of ascertaining his means of knowledge by a
reference to the teachings of the text-books of his profes-
sion and the scientific works from which he had drawn the
theories and principles to which he had testified.   Again,
we cannot conceive that it would be possible by any rule
of evidence to base the testimony in chief of the witness
upon his experience in obstetrics.   For instance, the normal
period of gestation, the probability of conception in the
first act of intercourse, the length of the period of ges-
tation in case of the first as compared with subsequent
children, the number of days that ill health caused by
uterine disorders would shorten the period of gestation, if
at all, and many other prominent elements in the case pre-
sented by the defense would naturally and inevitably re-
quire the witness to go outside of the domain of *experience*
as an obstetrician, and it seems to us that he very properly
and truthfully answered that this testimony was based
upon medical authorities.   For the purpose, therefore, of
testing his recollection as well as his knowledge, it was
proper to interrogate him as to the teachings of those au-
thorities, and in case his testimony was incorrect to con-
front him with them in order that he might be corrected
and the jury thus be rendered able to judge of the weight to
which his testimony was entitled.   It is insisted that the

testimony was inadmissible because " the testimony of the witness shows that his opinion on the point in question was opposed to these same medical authorities." As we have shown, the testimony entered the domain of science, and the ground upon which the objection is founded appeals most strongly to the mind of the writer as cogent reasons why the cross-examination was proper.

" 7th. The court erred in overruling the proposition of plaintiff in error to read from Lusk, on page 110, the words ' gestation protracted beyond the two hundred and eighty-fifth day is certainly a very rare occurrence,' and ask the witness Dr. Root, in connection with his testimony, whether his experience bears out that statement."

The question here presented is not whether the book referred to or any of its contents were admissible in evidence, for plaintiff in error contended in his brief that " books of science are inadmissible in evidence to prove opinions therein contained," and that the admissions of such evidence would be erroneous. The simple question was, whether or not the witness coincided with the view expressed by the author, or in other words whether the experience of Dr. Root was that gestation protracted beyond the two hundred and eighty-fifth day was of very rare occurrence. Upon the question of the length of the period of gestation this witness, as well as many others, was examined fully, and while the ruling may have been erroneous it was clearly without any prejudice to plaintiff in error. It is quite clear from the theory of plaintiff in error that it was not his purpose to get the quoted paragraph before the jury as evidence. This quotation was again presented to Dr. Miller upon his cross-examination by plaintiff in error, with the question as to whether that statement was authority in the profession? An objection was again sustained by the court. It is the opinion of the writer that had the question been propounded for the purpose of ascertaining whether or not the work was considered a repu-

table one and a standard of authority in the medical profession, with a view to its introduction in evidence, or for the purpose of testing the knowledge of the witness on cross-examination, the interrogatory would have been entirely proper and the ruling of the court would have been erroneous. But it is clear that counsel had neither purpose in view. In the preceding question the witness was asked if he considered the work referred to a " standard, recognized work in his profession," and he answered that he did. The book as a standard authority was fully sustained, and that was sufficient.

8th. The next error complained of is in overruling the objection of plaintiff in error to a question propounded by defendant in error to Dr. Livingston on cross-examination. The examination-in-chief of this witness, in some particulars, was confined to his experience and observation, while in others he clearly testified from his general information upon the subjects presented, which included the period of gestation, the probability of impregnation from intercourse during the menstrual flow, and as to his familiarity with certain works on the subject of midwifery. The question objected to was as follows : " I will ask you to state whether it makes any difference whether the woman consents and takes part voluntarily in the sexual act or not, as to her becoming pregnant?" It is claimed that this question was improper on cross-examination, no ground having been laid for it in the examination-in-chief.

We take it to be a proposition so elementary and well settled as not to require the citation of authorities, that in case of the examination of expert witnesses a wide range should be given to the cross-examination for the purpose of testing the knowledge of the witness as to the subject upon which he assumes to testify. Under this rule, if no other, the question was proper.

The last contention of plaintiff in error is, that the verdict is against the clear weight of the testimony. This is

Hutchinson v. State.

based upon the fact that according to the testimony of the prosecution there was but one act of intercourse, which was had by force at the time of her menstrual flow, and more than forty weeks prior to the birth of the child. Her testimony was that it occurred about the last of July or the first of August, 1883. The child was born on the 30th day of May, 1884, making the period of gestation, if she was correct as to the date of the intercourse, about three hundred and four days, or about twenty days longer than the normal period of gestation. The testimony of a number of experts was taken and it was shown that while the probabilities would be against the truth of the statements of defendant in error, yet such was by no means conclusively so. Also that pregnancy would probably follow from the intercourse testified to under the circumstances shown to have existed, and that the period of gestation was not extended beyond what medical science and experience proves to be possible. These questions were properly submitted to the jury under proper instructions. They were fully and carefully examined. Physicians of high standing in their profession were before the jury, and, in the main, supported the testimony of the complainant (although somewhat conflicting), to the extent that the facts of which she testified were not impossible. We cannot say that the verdict was not supported by sufficient evidence.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.