WILLIAM INGRAM, PLAINTIFF IN ERROR, v. THE
STATE OF NEBRASKA, EX REL. CALLIE McINTOSH,
DEFENDANT IN ERROR.

1. · **Bastardy:** JURISDICTION OF COUNTY JUDGE. The county
judge has jurisdiction to hear proceedings instituted under chapter 37 of Compiled Statutes, entitled "Illegitimate Children."

2. ————: RESIDENCE OF MOTHER: PROSECUTION, WHERE COMMENCED. Where an unmarried woman resided in the county of
C., and while so residing in the said county became pregnant,
but prior to her confinement, and for that purpose, she was
removed to the Home of the Friendless, in the county of L., and
the child was there born, it was *Held*, That a prosecution in
bastardy could be there maintained upon her return to the
county of C., there being no proof that she had permanently
abandoned the county of C. as her residence.

3. ————: EVIDENCE. Ordinarily the decision of a trial court in
favor of a plaintiff in error cannot be assigned as error upon

3 [ 33 ]

which to base a reversal of a judgment; hence in proceedings in bastardy, where the attorney conducting the prosecution instructed the prosecutrix to turn the face of the illegitimate child so that the jury could observe it, and which, upon objection being made thereto, was held by the court to be improper, no error could be assigned.

·4. ———: ARGUMENT OF ATTORNEY. In proceedings in bastardy, where the defendant, although present in court, did not take the witness stand as a witness in his own behalf and deny the charge made by the prosecutrix, it was held competent for the attorney for the prosecutrix, in arguing the case to the jury, to refer to such want of denial on the part of the accused.

5. Evidence examined, and *Held*, To support the verdict of the jury.

ERROR to the district court for Cass county. Tried below before POUND, J.

*Crites & Ramsey,* for plaintiff in error, cited: *Keniston v. Rowe,* 16 Me., 38. *Young v. Makepeace,* 103 Mass., 50. *Eddy v. Gray,* 4 Allen, 435. *Hannawalt v. The State,* 24 N. W. Rep. (Wis.), 489. *State v. Danforth,* 48 Iowa, 43. *City of Topeka v. Myers,* 8 Pac. Rep. (Kan.), 726. *State v. Balch,* 2 Id., 609.

No appearance for defendant in error.

REESE, CH. J.

This was a proceeding in bastardy, instituted in the county court of Cass county, to compel plaintiff in error to maintain the illegitimate child of one Callie McIntosh. A trial in the district court resulted in a verdict of guilty and the usual decree for support.

The first question presented for decision is as to the jurisdiction of the county judge in cases of this kind.

Chapter 37 of the Compiled Statutes provides, in substance, that, on complaint being made to a justice of the peace, accusing on oath or affirmation any person of being

the father of a bastard child, the justice of the peace shall take the accusation in writing, and thereupon issue his warrant for the arrest of the person charged. That, upon an examination into the question presented, the plaintiff shall be examined under oath, in presence of the accused, respecting the cause of her complaint, and such accused person shall be allowed to ask the plaintiff, when under oath, such questions as he may think necessary for his justification. If on such examination the party accused be found guilty, he shall pay, or secure to be paid, to the plaintiff such sums of money or property as she may agree to receive, in full satisfaction, and shall further give bond to the county commissioners of the county in which the plaintiff shall reside, and their successors in office, to secure the maintenance of the child, then the accused shall be discharged, upon payment of costs. It is required that the agreement shall be acknowledged by both parties in the presence of the justice.

It is well settled in this state that a proceeding of the character referred to is a civil action, and that it should be conducted in the name of the prosecutrix. *Cottrell v. State,* 9 Neb., 125. *Jones v. State,* 14 Id., 210. *Kremling v. Lallman,* 16 Id., 280. *Altschuler v. Algaza,* Id., 631.

Sec. 2 of Chap. 20, Compiled Statutes of 1887, provides that county judges, in their respective jurisdictions, shall have and exercise the ordinary powers and jurisdiction of a justice of the peace, and shall, in civil cases, have concurrent jurisdiction with the district court in all cases in any sum not exceeding $1,000, etc.; "*Provided,* That county courts shall not have jurisdiction : I. In any action for malicious prosecution. II. In any action against officers for misconduct in office, except where like proceedings can be had before a justice of the peace. III. In actions for slander and libel. IV. In actions upon contracts for the sale of real estate. V. In any matter wherein the

title or boundaries to land may be in dispute, nor to order or decree the sale or partition of real estate."

This provision is substantially the same as section 907 of the civil code, limiting the jurisdiction of justices of the peace. It is insisted that a proceeding to recognize the putative father of a bastard child is not one of the ordinary powers and jurisdiction of a justice of the peace, and therefore the county court can have no jurisdiction in such cases. Were it the law that what is termed the ordinary powers and jurisdictions of a justice of the peace are confined to the jurisdiction given by sections 905 and 906 of the civil code, it is quite probable that the contention of plaintiff in error would be correct, but we do not so understand the meaning of the term. The powers and jurisdiction of a justice of the peace are such as are given by statute, and the fact that it is provided in the chapter on illegitimate children that the complaint may be made to a justice of the peace, does not, in our opinion, make it any the less one of the ordinary powers of that officer than though it appeared in the sections of the civil code above referred to.

In *Blaco v. Haller*, 9 Neb., 149, it was held that the action for forcible entry and detention, or the detention only of real property, was within the ordinary powers of a justice of the peace. It is true that this holding seems to be based somewhat upon the fact that the provision of the statute conferring this jurisdiction was in the act concerning the general jurisdiction of a justice of the peace, but that, to our mind, can make no difference. The ordinary powers and jurisdiction of a justice of the peace consist in the exercise of his judicial functions in the trial of causes and the enforcement of remedies, as is distinguished from such other duties as are imposed upon that officer by statute, such as the superintendence of the poor, fence viewers, impounding diseased stock, etc. We therefore hold that the county judge had jurisdiction to

hold plaintiff in error for his appearance before the district court.

It is shown by the testimony that at the time the prosecutrix became pregnant, she resided in Cass county, and continued to so reside until a short time prior to her confinement, when she was, by plaintiff in error and others, removed to the Home for the Friendless, in Lancaster county, where she remained during her confinement and for some time thereafter.

Sec. 1 of Chap. 37 gives jurisdiction to justices of the peace to receive the complaint of unmarried women, resident of such county, against persons charged with the paternity of illegitimate children, born or unborn.

Whether or not the maintenance of the child would become a charge upon Cass county would depend somewhat upon its future residence, but there can be no doubt that the prosecutrix was a resident of Cass county at the time she became pregnant, and perhaps at the time of filing the complaint. The mere fact of her enforced removal therefrom, for the reason that she was homeless and friendless, could not in any way deprive her of her individual action against plaintiff in error, for her satisfaction, as provided in the section referred to, and we think it quite probable that, even had she no claim under this provision of the section, the action could still be maintained in Cass county in favor of the public. There is no proof that the permanent residence of the prosecutrix was changed, or that at the time she was taken to the Home for the Friendless, in Lancaster county, by plaintiff in error, or at any time thereafter, she had no intention of returning to Cass county.

It is contended that the attorney for defendant in error was guilty of prejudicial misconduct in causing the prosecutrix, when upon the stand, to turn the face of the child to the jury, in order that the jury might observe it, presumably for the purpose of a comparison of its features

with those of the plaintiff in error. It appears by the bill of exceptions that this direction was given to the prosecutrix by the attorney conducting the examination on her part, but that objection thereto was immediately made by counsel for plaintiff in error, and that the objection was sustained. It also appears, by affidavit filed in the district court, that upon this objection being sustained, the child was immediately removed from the presence of the jury. The ruling of the court was in favor of plaintiff in error, was correct, and therefore no error could be assigned thereon.

Plaintiff in error did not take the witness stand as a witness in his own behalf upon the trial. During the argument, counsel for defendant in error commented on the fact that the defendant did not testify in his own behalf, and being present in court, that he did not deny the charge. Counsel for plaintiff in error objected to this, but the objection was overruled, and such ruling is now assigned for error. While it is true that, in some respects, a prosecution in bastardy is *quasi* criminal, to the extent that the accused may be subject to arrest and imprisonment, yet we apprehend that, in the matter of the trial, no more strict rule could be applied than that of other civil actions.

As we have seen, the proceeding in this state is a civil action, and should probably be conducted in the name of the prosecutrix as plaintiff, and the fact that the accused is present in court, hears the testimony of the prosecutrix, with such witnesses as she may produce, and from his other witnesses in his own behalf, but fails to deny the charge, is no doubt a proper subject of comment in the argument of the case.

It is insisted further, that the court erred in excluding the testimony of "Jack Williams" as to the statements of the prosecutrix that another person than the plaintiff in error was the father of the child. It seems to be the con-

tention of counsel that this testimony was excluded on the ground that the attention of the prosecutrix had not been called to such statement while she was on the witness stand, but upon an examination of the bill of exceptions, it seems that one Frank Williams was sworn on rebuttal by defendant in error, for the purpose of showing that the prosecutrix was removed from the residence of a Mrs. King, by plaintiff in error, or at least that he accompanied her when she went away. On cross-examination, the counsel for plaintiff in error asked the witness if he had ever heard the prosecutrix say anything about who was the father of the child. An objection to this question was sustained. Plaintiff in error then offered to show, by cross-examination of the witness, "That on different occasions, while he was at Mrs. King's, he heard the witness McIntosh (prosecutrix) say, that Frank Ingram was the father of her unborn child, and that she never accused the defendant of being the father of the child until after she heard that Frank Ingram was married." This was objected to as not proper cross-examination, and as not having been brought out on the direct examination, and the objection was sustained. In this the trial court was correct. There was nothing in the examination-in-chief which could be said to lay any foundation for the proposed cross-examination.

The last contention of the plaintiff in error is, that the verdict is clearly wrong. This involves an examination of the evidence. While we have carefully read all that is presented by the bill of exceptions, yet we must be excused from entering upon a detail of the disgusting story told by the witnesses. The testimony of the prosecutrix was definite, direct, and positive, while she denied intercourse with others. There were some who came upon the witness stand and contradicted her by publicly parading their own shame. Their statements may have been true, and yet the verdict as against plaintiff in error have been cor-

rcct. He did not see fit upon the trial to deny the charge under oath. There was sufficient testimony to justify the jury in finding the verdict returned. In this connection, it is insisted that the normal period of gestation fixes the intercourse by which she became pregnant as having occurred about the 5th of July, 1883, and that the testimony shows that plaintiff in error had no opportunity or association with the prosecutrix until about the 15th of August of the same year. This involves a conflict in the testimony, as the time fixed by the prosecutrix was about July 5th. We need not, therefore, enter into a discussion of the problem growing out of the discrepancy in time as affected by the normal period of gestation.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.