## In re Herman F. Granger.

Filed October 5, 1898.　No. 10142.

Statutes: Evidence of Enactment. Where from the journals of both branches of the legislature and from the copy of the bill sent to the governor for approval, and by him approved, and which was attested by the proper officers of both houses, it is shown that a certain bill was properly passed, that fact cannot be disproved by the introduction in evidence of what it is agreed between the litigants was the bill originally introduced and memoranda thereon indorsed tending to show that the bill approved and attested was not the one really passed by both houses.

Error from the district court of Lancaster county. Tried below before Holmes, J. *Affirmed.*

The facts are stated by the commissioner.

*Tibbets Bros., Morey & Ferris,* for petitioner:

The statute under which applicant was sentenced is unconstitutional and void, hence the court had no jurisdiction to impose the sentence. (*In re McVey,* 50 Neb. 483.)

Upon an application for a writ of habeas corpus the constitutionality of the statute under which applicant was convicted will be inquired into, and if found to be unconstitutional the writ will be granted. (*Ex parte Smith,* 36 S. W. Rep. [Mo.] 628; *Ex parte Marmaduke,* 91 Mo. 228; *In re Thompson,* 117 Mo. 83; *In re Betts,* 36 Neb. 282; *In re Havlik,* 45 Neb. 747; *Ex parte Donahoe,* 24 Neb. 66.)

Evidence from other sources than the record may be introduced. (Church, Habeas Corpus secs. 202, 236; *In re Divine,* 21 How. Pr. [N. Y.] 80; *Ex parte McGrew,* 40 Tex. 472.)

Courts take judicial notice of the journals of the legislature to ascertain the validity of a statute. (*Stein v. Leeper,* 78 Ala. 517; *Edger v. Board of Commissioners,* 70 Ind. 331; *Blake v. National Banks,* 23 Wall. [U. S.] 307;

*Fosdick v. Village of Perrysburg,* 14 O. St. 472; *Somers v. State,* 58 N. W. Rep. [S. Dak.] 804.)

*R. C. Noleman,* also for petitioner.

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General,* for the state.

RYAN, C.

This application for a writ of habeas corpus was denied in the district court of Lancaster county, and by petition in error the judgment of said court is presented for review in this court. The detention of the applicant was justified by the warden of the penitentiary of this state by a record of the conviction of the applicant of the crime of stealing a cow of the value of $20 and his sentence by the district court of Sheridan county to imprisonment for a term of three years, which term has not yet expired. The act making the stealing of cattle a felony is chapter 77 of the Laws of Nebraska 1895, carried into the Compiled Statutes as section 117a of the Criminal Code. On the trial there were offered in evidence the portions of the journals of both houses of the legislature of 1895 in which there was reference to the acts of either legislative branch in reference to House Roll No. 87. There was also by the applicant introduced in evidence the copy of a bill showing the approval of the governor and the attestation of the proper officers of each branch of the legislature. At the time the copy of the bill was offered in evidence it was admitted that it was a true and correct copy of House Roll No. 87 as it was enrolled, engrossed, and presented to the governor. By comparison we find its title and language to be identical with those of chapter 77, Laws of Nebraska 1895. Over objections of the respondent there was also offered by the applicant a copy of a bill certified by the secretary of state, which, it was admitted, was a correct copy of the original bill and of its indorsements now on file in

the office of said secretary of state. The reliance of the applicant for his right to be released from confinement is upon the showing made by the above evidence of alleged failure to comply with one requirement of section 10, article 3, of our constitution, which is: "No bill shall be passed unless by assent of a majority of all the members elected to each house of the legislature." It is urged that while the act published only shows that it was directed against the stealing of cattle, the act introduced and adopted, in at least one branch of the legislative body, was directed against the stealing of cattle and hogs. Whether or not the existence of the discrepancy has been made to appear by satisfactory evidence we shall now consider.

House Roll No. 87 was introduced in the house under this title: "A bill for an act to punish cattle stealing and to punish persons receiving or buying stolen cattle, and to punish all persons harboring or concealing cattle thieves." The journal of the house discloses that House Roll No. 87, by the title just quoted, regularly passed through the succesive stages in the house and was transmitted to the senate under the title above given. While in the house the judiciary committee, to which it had been referred, recommended that it be passed as amended, but there is no other intimation in the journal of the house that there was any amendment. We must therefore assume that this reference to an amendment was without warrant and was probably the result of misapprehension. At any rate this recitation is not of such controlling force that from it we are required to assume that there was an amendment and that it was of such a character as to defeat the action of the house.

In the senate, House Roll No. 87 was introduced under this title: "A bill for an act to punish cattle stealing and to punish persons receiving or buying stolen cattle, and to punish all persons harboring or concealing cattle thieves," and this was the title under which it was referred to the committee on agriculture. When that com-

mittee made its report to the senate it was in this language:

".MR. PRESIDENT: Your committee on agriculture, to whom was referred House Roll No. 87, a bill for an act to punish cattle and hog stealing and to punish persons receiving or buying stolen cattle or hogs, and to punish all persons harboring or concealing cattle or hog thieves, have had the same under consideration and instruct me to report the bill back to the senate with the recommendation that it be placed on general file and passed as amended."

The next action taken upon this bill is recited in the senate journal in this language:

".MR. PRESIDENT: Your committee of the whole house has had under consideration * * * also House Roll No. 87, a bill for an act to punish cattle stealing and to punish persons receiving or buying stolen cattle, and to punish all persons harboring or concealing cattle thieves, and submit the following amendments: Amend by striking out section two (2); amend by striking out the word 'hog' wherever it appears in the bill, and report the same back to the senate with the recommendation that it be passed with the word 'hog' stricken out.

"D. CRANE, *Chairman.*"

After this report the committee on engrossed and enrolled bills reported senate amendments to House Roll No. 87, a bill for an act to punish cattle stealing and to punish persons receiving or buying stolen cattle, and to punish all persons harboring or concealing cattle thieves, correctly engrossed. Afterward House Roll No. 87, a bill for an act to punish cattle stealing and to punish persons receiving or buying stolen cattle, and to punish all persons harboring or concealing cattle thieves, was read a third time and passed by the senate. These proceedings in the senate show an attempt to eliminate the word "hog" from the bill, though from the journal of either house we have no means of knowing that it ever

was in the bill. Certainly, as already shown, it was not in the title, and if that is to be assumed to be a correct reflex of the scope of the bill, the word "hog" was not in it when it was adopted by the house of representatives. Nevertheless the senate ordered it stricken out of the bill considered in that body, and if the entries in the journal of the other house are to govern as against mere inferences, the senate in fact thereupon passed the bill as it had passed the other house.

The next mention we find of this bill is in the house of representatives, in which the journal recites that the following proceedings were had:

"The honorable secretary of the senate appeared with the following message:

"SENATE CHAMBER, LINCOLN, NEB., April 5, 1895.

"MR. SPEAKER: I am directed by the senate to inform your honorable body that they have passed the following bills: * * * House Roll No. 87, a bill for an act to punish cattle and hog stealing and to punish persons receiving or buying stolen cattle or hogs, and to punish all persons harboring or concealing cattle or hog thieves. * * * Your concurrence in the above is respectfully asked."

Subsequently it is recited in the journal of the house of representatives that a motion that said house does not concur in the senate amendments to House Roll No. 87 prevailed. The bill was thereupon returned to the senate, in the journal of which body is found the following record:

"MR. PRESIDENT: I am directed by the house to inform your honorable body that they have refused to concur in senate amendments to House Roll No. 87, a bill for an act to punish cattle stealing and to punish persons receiving or buying stolen cattle, and to punish all persons harboring or concealing cattle thieves, and respectfully ask the senate to recede therefrom.

"W. M. GEDDES, *Chief Clerk.*"

Afterwards, on motion, the senate receded from its amendments.

The bill under the title and in the form in which we find it published as chapter 77, Laws of Nebraska 1895, was duly approved by the governor and attested by the proper officers of the senate and house of representatives. We have not been able to discover in the journal of either branch of the legislature evidence of irregularities such as would justify us in assuming that there has been such a failure to comply with constitutional requirements that the act in question must be declared not to have been adopted by both houses. On the contrary, it seems to us that while irregularities exist as shown by the journals, they are not such as vitiate legislative action. These irregularities, in the opinion of the writer, do serve one purpose, and that is to illustrate the danger of permitting the impeachment of an act because not constitutionally adopted by reason of facts shown independently of the bill enrolled, engrossed, approved by the governor, and attested by the proper officers of both branches of the legislature. In this case, however, the attempt has been made to contradict, not only the inferences proper to be drawn from the bill in the condition above indicated, but, in addition, to negative the proofs offered by the journals of the two houses with respect to the purport of the title expressly given in said journals and the contents of the bill, which should be presumed from the recitations of the journals and from the title of the act as it occurs in said journals. To effect this purpose the applicant for the writ of habeas corpus offered in evidence, over the objections of the attorney general, what was certified by the secretary of state to be a copy of the original bill introduced in the house of representatives, together with indorsements thereon, which are evidently memoranda purporting to show what action had been taken in respect thereto in each branch of the legislature. When this was offered in evidence proper objections were made, but the attorney general, representing the respondent, ad-

mitted that it was a copy of the original bill and of its history in the house and senate as disclosed by the original bill on file in the office of the secretary of state, which bill was House Roll No. 87, and that this copy offered was a correct copy of the bill introduced in the legislature as House Roll No. 87.

That it was not competent to impeach the proceedings of the legislature by contradicting the journals of the house and senate and the facts proper to be inferred from the approval of the governor and the attestation of the bill by the officers of both branches of the legislature we think is clear from the cases which we shall now consider.

In *Attorney General v. Rice*, 64 Mich. 385, there was used this language: "If the constitution has not been complied with in the passage of an act, that fact must be shown by the printed journals, or the certificate of the secretary of state, the custodian of legislative proceedings. Such fact cannot rest in parole. * * * And unless the journal shows affirmatively that the constitutional directions were not complied with it must be presumed that they were followed."

In *Koehler v. Hill*, 60 Ia. 541, Seevers, J., speaking for a majority of the court, said: "The senate journal, by the provisions of the constitution, is made primary evidence of the contents of the resolution as it passed the senate. This journal is in existence and, as has been said, was kept as required by the constitution. Now we are asked to ignore this constitutional evidence and receive parole evidence or ascertain for ourselves, by inquiry of those who are supposed to know, as to the existence of a fact which is contradictory to the journals kept, certified to, and preserved by sworn officers as provided by law. To our minds this is a startling proposition."

The supreme court of Ohio, in *State v. Smith*, 44 O. St. 348, said: "Counsel have exibited unusual industry in looking up the various cases upon this question, and out of a multitude of citations not one is found in which any

court has assumed to go beyond the proceedings of the legislature as recorded in the journals required to be kept in each of its branches on the question whether a law had been adopted. * * * Imperative reasons of public policy require that the authenticity of laws should rest upon public memorials of the most permanent character. * * * In this state, what appears on the journals affecting the passage of a law has been noticed by this court, but in no instance has attention been given to anything not appearing upon the journals though it be the omission of a requirement of the constitution."

In the case entitled *Division of Howard County*, 15 Kan. 194, it was claimed that there was a discrepancy between the engrossed bill as it passed the house and the enrolled bill as certified to by the proper legislative officers and approved by the governor; and with reference to this contention there was used this language: "The engrossed bill as it passed the house is also on file in the office of the secretary of state, but it is not signed by any person, and there is no record evidence of any kind whatever tending to show that it is in fact such engrossed bill. The only record evidence of any kind whatever showing what said bill No. 54 contained in any of its stages from the time it was first introduced in the house until it was finally filed as an enrolled bill in the office of the secretary of state is the enrolled bill itself. The journals of the two houses are entirely silent upon the matter, and the said engrossed bill, as we shall presently see, is not a record, nor a part of any record. An engrossed bill, in this state, is the bill as copied for final passage in either house. * * * The enrolled bill is the bill as copied after its final passage in both houses and as it has passed both houses and as presented to the governor for his signature and approval." The opinion then quotes the provisions of the constitution of that state relative to keeping a journal of the proceedings of each branch of the legislature and the provisions of the statutes of that state providing that all laws passed by

the legislature shall be deposited with the secretary of state, etc., provisions similar to those in our own state. The court then says: "It will be noticed that the legislative journals and the enrolled bills are the only records required by law to be kept for the purpose of showing any of the legislative proceedings. There is no provision for preserving the engrossed bill as a record of the legislative proceedings, and as the legislative journals and the enrolled bills are, by law, records and the only records of legislative proceedings, they must, of course, import absolute verity and be conclusive proof as to whether any particular bill has passed the legislature, when it passed, how it passed, and whether it is valid or not. * * * Now, as we have before intimated, the enrolled bills and the legislative journals being records provided for by the constitution importing absolute verity, we cannot take judicial notice that they are untrue, nor can we even allow evidence to be introduced for the purpose of proving that they are not true. Therefore, as the enrolled bill of the law dividing Howard county and the journals of the legislature would seem to prove that said bill has been legally passed by the legislature and has been legally approved by the governor in the form as it now appears enrolled in the secretary's office, we cannot take judicial notice that said bill was not properly so passed and so approved, and we cannot even allow evidence to be introduced showing that it was not so passed and so approved."

Subsequent to the delivery of the above opinion the supreme court of Kansas, in *State v. Francis*, 26 Kan. 724, said: "In our opinion the enrolled statute is very strong presumptive evidence of the regularity of the passage of the act and of its validity, and that it is conclusive evidence of such regularity and validity unless the journals of the legislature show clearly, conclusively, and beyond all doubt that the act was not passed regularly and legally. * * * If there is any room to doubt as to what the journals of the legislature show, if they are merely

silent or ambiguous, or if it is possible to explain them upon the hypothesis that the enrolled statute is correct and valid, then it is the duty of the courts to hold that the enrolled statute is valid."

The principles above enumerated and enforced by the courts from whose opinions we have quoted are decisive of the rights of the applicant in this case. The evidence submitted does not overcome the presumption of regularity of procedure in both houses which arises from the recitations of the journals offered in evidence and from the bill admitted to have been enrolled, engrossed, and presented to the governor for his signature, and which, upon its face, shows it to have been attested by the proper officers of both houses of the legislature. It follows, therefore, that the judgment of the district court is

AFFIRMED.