STATE OF NEBRASKA V. L. J. ABBOTT.

FILED OCTOBER 18, 1899.   No. 10,850.

Statutes: EVIDENCE OF ENACTMENT. The enrolled bill, authenticated by the proper officers of the house, approved by the governor, and filed with the secretary of state, and the journals of the

State v. Abbott.

houses are the official records of the proceedings of the legisla-
ture relative to the enactment of the law, and are the only com-
petent evidence in a controversy in regard to the due passage of
the bill, or in respect to alleged material errors in its substance.

ERROR from the district court of Lancaster county.
Tried below before HOLMES, J. *Affirmed.*

The facts are stated in the opinion.

*Silas A. Holcomb* and *W. B. Price,* for the state:

The enrolled bill is only *prima facie* evidence of the
enactment of a law. Records of legislative proceedings
may be introduced in evidence to show that a statute
was not enacted according to constitutional methods.
See *State v. McClelland,* 18 Nebr., 238; *Nesbit v. People,* 36
Pac. Rep. [Colo.], 221; *Supervisors v. Heenan,* 2 Minn.,
281; *Field v. Clark,* 143 U. S., 649; *Purdy v. People,* 4 Hill
[N. Y.], 384; *Leonard v. Southern P. R. Co.,* 21 Ore., 560;
*State v. Platt,* 2 So. Car., n. s., 150; *City of Watertown v.
Cady,* 20 Wis., 528; *Meracle v. Down,* 64 Wis., 323; *State
v. Swan,* 40 L. R. A. [Wyo.], 195; *Gardner v. Collector,* 6
Wall. [U. S.], 499; *State v. Robinson,* 20 Nebr., 96; *In re
Groff,* 21 Nebr., 647; *State v. Moore,* 37 Nebr., 13; *In re
Granger,* 56 Nebr., 260; *Webster v. City of Hastings,* 56
Nebr., 669; *Jones v. Hutchinson,* 43 Ala., 721; *Moody v.
State,* 48 Ala., 115; *Chicot County v. Davies,* 40 Ark., 200;
*Glidewell v. Martin,* 51 Ark., 559; *Fowler v. Peirce,* 2 Cal.,
195; *People v. Dunn,* 80 Cal., 211; *Spangler v. Jacoby,* 14
Ill., 297; *Hollingsworth v. Thompson,* 12 So. Rep. [Ala.], 1;
*Berry v. Baltimore & D. P. R. Co.,* 41 Md., 446; *Legg v.
Mayor,* 42 Md., 220; *Strauss v. Heiss,* 48 Md., 292; *Rode
v. Phelps,* 80 Mich., 598; *People v. Burch,* 84 Mich., 408;
*State v. Mead,* 71 Mo., 266; *Opinions of Justices,* 35 N. H.,
579; *De Bow v. People,* 1 Denio [N. Y.], 9.

*A. S. Tibbets* and *Ed P. Smith, contra:*

References: *United States v. Ballin,* 144 U. S., 1; *People
v. McElroy,* 72 Mich., 450; *Attorney General v. Rice,* 64

Mich., 385; *In re Granger*, 56 Nebr., 260; *People v. Board of Police*, 75 N. Y., 38; *People v. French*, 91 N. Y., 260; *Kehn v. State*, 93 N. Y., 291; *Hawkeye Ins. Co. v. Brainard*, 72 Ia., 130; *Hoffman v. Chippewa County*, 77 Wis., 214.

HARRISON, C. J.

The defendant in error, prior to April 1, 1897, became by appointment, superintendent of the hospital for the insane at Lincoln, and during the time he was such officer, anterior to the date mentioned, he drew his salary in accordance with its amount as fixed by law (see Compiled Statutes, ch. 40, sec. 58), and appropriated by the legislature of 1895, at the rate of $2,500 per annum. During the two years from the said date he collected salary as if established at $2,000 per year, but at or after the expiration of the two years he filed with the auditor of public accounts a claim for what he asserted, and now contends, was the balance due him, $1,000, or $500 for each year. His claim was disallowed by the auditor, but on appeal to the district court of Lancaster county, as the result of a trial, the order of the auditor was reversed and a judgment entered in favor of the claimant. The state presents the case to this court for review. It is the contention for the state that by the general salary act, or House Roll 615, passed by the legislature of 1897, there was appropriated for the payment of the salary of the superintendent of the hospital for the insane at Lincoln $2,000 per year, or $4,000 for the biennium, while for the defendant in error it is asserted that the appropriation was $2,500 for each year, and $5,000 for the two. It is claimed for the state that in the original bill, as introduced in the house of representatives, the amounts were $2,500 per year and $5,000 for the two years; that the bill was so amended in the house as to read $2,000 instead of $2,500, and $4,000 in place of $5,000. The enrolled bill which was signed by the officers of the senate and house, and presented to and approved by the governor, and filed in the office of the secretary of state, a certified copy of which

was introduced in evidence, disclosed the items of appropriation in question as $2,500 for each year and $5,000 for the biennial period. This raised a presumption, or established *prima facie,* that the sums appropriated to pay the superintendent of the hospital for the insane at Lincoln during the two years were as claimed by the defendant in error, and that both houses of the legislature had so fixed them by the bill or act. The state introduced in evidence the original bill, House Roll 615, or what was in the office of the secretary of state, and was offered as such bill or roll, and as received there were with it in each instance, pinned on the face of one of the pages of the bill, what purported to be amendments of it. There were several of these. Some of them had on them, in blue pencil marks, the word "adopted," or the word "carried," and others were not marked. One of these, which by its terms purposed to amend the portion of the bill which referred to the salary of the superintendent of the hospital for the insane at Lincoln, was attached with a pin to the face of the page of the bill on which appeared the items of appropriation for the payment of said salary, and it had on its face, in blue pencil marks, the word "adopted." There was also offered and received what it was claimed is the engrossed House Roll 615, and in this the appropriations in controversy appear as contended for by the state. All recitations of the journals of both senate and house in which there was any reference to House Roll 615 were introduced in evidence. There was also made of evidence a report to the house of a committee which had been appointed to confer with a committee of the senate in relation to senate amendments to House Roll 615. To the introduction of these matters by the state, to which we have alluded, objections were interposed for the defendant in error, and they were received each subject to the objection. The journal of the house discloses that the bill was amended and passed that body as amended, but does not give any light in regard to the substance or subject-matter of any amend-

ment. The journal of the senate contained statements from which appeared the amendments proposed in the body, also the report of its conference committee in respect to House Roll 615, but in none of them was there any mention of the items of appropriation herein the subject of dispute. It also appeared in a journal that the bill, after agreement upon amendments and final passage, was duly presented to the governor.

In regard to what will establish a law as passed by the legislature, if the question arises, it has been stated: The decisions may be classified into those in which the enrolled bill has been deemed conclusive, and those recognizing the doctrine that courts will look back of said bill and examine and consider the journals of the legislature. See 23 Am. & Eng. Ency. Law, 200. In some cases the courts of last resort have approved the reception in evidence of the engrossed bill. See 23 Am. & Eng. Ency. Law, 198; *Berry v. Baltimore & D. P. R. Co.*, 41 Md., 463; 20 Am. Rep., 69; *Hollingsworth v. Thompson*, 12 So. Rep. [La.], 1. In this state we have not decided the enrolled bill to be conclusive, but have examined the legislative journals. In no case up to the present has the supreme court approved the reception and consideration of anything more or further than we have just stated. See *Hull v. Miller*, 4 Nebr., 503; *Cottrell v. State*, 9 Nebr., 125; *Ballou v. Black*, 17 Nebr., 389; *State v. McClelland*, 18 Nebr., 236; *State v. Robinson*, 20 Nebr., 96; *In re Groff*, 21 Nebr., 647; *State v. Van Duyn*, 24 Nebr., 586; *State v. Moore*, 37 Nebr., 13; *In re Granger*, 56 Nebr., 260. In the case last cited the consideration of other evidence than the enrolled bill and the journals was in effect disapproved. On the general proposition see, also, *Webster v. City of Hastings*, 56 Nebr., 752. In *Ames v. Union P. R. Co.*, 64 Fed. Rep., 165, in the determination of whether an act of the legislature of this state had been so passed as to become a law, after reference to sections 8, 10 and 11, article 3, of our constitution, and in the body of the opinion to several of the decisions of this court on the subject,

it was stated: "Held, that the most such constitution authorizes is that, in respect to certain matters, evidence may be sought in the journals of the two houses, which will prevail over that which appears on the enrolled bill as found in the secretary of state's office. * * * Parol testimony is not admissible to impeach the validity of an act which is shown by the record to have been duly and legally passed." In *Ex. parte Howard-Harrison Iron Co.*, 24 So. Rep. [Ala.], 516, there was presented a question similar to the one in the case at bar. It was observed in the body of the opinion: "Of course the presumption is that the bill signed by the presiding officers of the two houses and approved by the governor is the bill which the two houses concurred in passing, and the contrary must be made to affirmatively appear before a different conclusion can be justified or supported. So here it must be made to affirmatively appear that amendments of the house bill in question were adopted by the senate, and were not concurred in by the house. And this must be shown by the journals of the two houses. No other evidence is admissible. The journals can neither be contradicted nor amplified by loose memoranda made by the clerical officers of the houses. To these the courts can not look for any purpose." In the syllabus: "The journals of both houses of the legislature are the only evidence admissible to show that amendments to a bill were adopted by one branch and not concurred in by the other, and that the bill as signed by the governor was not the bill passed."

We will now turn to some of the provisions of the constitution and the laws of this state which relate to the matter in hand.

In section 8, article 3, of the constitution appears the following in regard to the legislature, its work, records etc.: "Each house shall keep a journal of its proceedings, and publish them (except such parts as may require secrecy) and the yeas and nays of the members on any question, shall at the desire of any two of them be

entered on the journal. All votes in either house shall be *viva voce*. The doors of each house and of —— committee of the whole shall be open, unless when the business is such as ought to be kept secret. Neither house shall, without the consent of the other, adjourn for more than three days." In section 10: "The enacting clause of a law shall be, 'Be it enacted by the legislature of the State of Nebraska' and no law shall be enacted except by bill. No bill shall be passed unless by assent of a majority of all the members elected to each house of the legislature and the question upon final passage shall be taken immediately upon its last reading and the yeas and nays shall be entered upon the journal." In section 11: "Every bill and concurrent resolution shall be read at large on three different days in each house, and the bill and all amendments thereto shall be printed before the vote is taken upon its final passage. No bill shall contain more than one subject, and the same shall be clearly expressed in its title. And no law shall be amended unless the new act contain the section or sections so amended and the section or sections so amended shall be repealed. The presiding officer of each house shall sign in the presence of the house over which he presides, while the same is in session and capable of transacting business, all bills and concurrent resolutions passed by the legislature." All laws shall be published in book form and distributed among the counties. See Constitution, art. 3, sec. 24. Every bill passed shall be presented to the governor, and, if he approves and signs it, it shall become a law, otherwise not; except he disapproves and returns it to the legislature, together with his stated objections, when it may or may not be passed over his veto, as the votes may determine; or if a bill be held by the governor for a certain number of days without any action, it will become a law. See Constitution, art. 5, sec. 15.

In section 14, chapter 48, Compiled Statutes, in which the duties of the officers of the houses of the legislature are prescribed, appears the following: "It shall be the

State v. Abbott.

duty of the chief clerk of the house of representatives, and the secretary of the senate, to attend the sessions of the respective houses, to call the rolls, read the journals, bills, memorials, resolutions, petitions, and all other papers or documents necessary to be read in either house, to keep a correct journal of the proceedings in each house, and to do and perform such other duties as may be imposed upon them by the two houses, or either of them."

In sections 1, 2, and the 10th subdivision of section 4, chapter 83, article 2, Compiled Statutes, it is set forth:

"Section 1. All public acts, laws, and resolutions passed by the legislature of the state shall be carefully deposited in the office of the secretary of state, and the secretary of state is charged with the safe keeping of said office and all laws, acts, resolutions, bonds, papers, and records which now are or shall hereafter be deposited therein.  He shall not permit any original rolls, papers, or public documents filed in his office to be taken out of it unless called for by a resolution of either or both houses of the legislature, or for the examination by the executive.

"Sec. 2. The secretary of the senate and the clerk of the house of representatives, at the close of each session of the legislature, shall deliver to the secretary of state all books, bills, documents, and papers in the possession of either branch of the legislature, correctly labeled, folded, and classified, according to the subject-matter of such documents, respectively; and the secretary of state is hereby required to preserve the same in his office."

Sec. 4, subdiv. 10.  "In the publication of the laws of this state, or the resolution or journals of the legislature, the secretary of state shall cause to be published in each volume a general certificate to the effect that the same as contained in such volume are true copies of the laws and resolutions of the legislature, as the case may be, on file · in his office."

It was not shown in the evidence herein, but the joint rules of the legislature of 1897 provided that all bills

after passage should be enrolled and then examined, and compared with the engrossed bills and errors, if any, corrected by the committees of the two houses on enrolled bills, acting jointly, and a report made to the houses, after which the bills were to be signed by the chief officers of the houses in a designated order or priority, and then presented to the governor. See Legislative Manual, 1897, p. 98. It will, no doubt, have been noticed that the enrolled bills must be filed with the secretary of state, and to them he must refer for the laws as passed. Of the proceedings of the houses of the legislature, the journals are the records prescribed by the fundamental law of the state, the constitution. To the enrolled bills and the journals it seems entirely proper to refer in case of a dispute in relation to the passage of a bill or any part thereof. The memoranda or slips of paper attached or pinned to the original bill were clearly incompetent. They were in no manner identified, except by their subject-matter respectively, and the fact that they were in the office of the secretary of state, and placed there by an officer of one house of the legislature, and probably that they were so delivered occurred because they were pinned to the original bill. There was nothing more to show that they ever became or were of the proceedings of the legislature. The original bill and the engrossed bill were not identified by the signature of any person or in any other manner than that they were placed in the office of the secretary of state by an officer of the legislature. Each had long prior thereto performed its functions, and had no longer an active existence, the first when the engrossed bill was prepared and reached the legislature, and the second when the enrolled bill had passed through the prescribed methods, and been duly accredited as correctly setting forth the legislative intentions on the subjects of the bill. Of both the original and engrossed bills, after their active use had ceased, no one seems to have been specifically charged that they be safely kept and preserved. They were in the possession of the legislature, and doubtless

should so remain. They came into the care of the secretary of state because they were in the possession of the legislature at the close of the session. See Compiled Statutes, ch. 83, art. 2, sec. 2. They were not of the specifically provided official records of the proceedings of the legislature. In *Hollingsworth v. Thompson, supra,* a case in which the engrossed bill was received in evidence, the appellate court, in voicing its approval, observed that it was of at least a "*quasi*-official character." That an act authenticated in the prescribed manner by the proper officers of the legislature, and approved by the governor was not passed, or that any portion of it was not, must be affirmatively and clearly shown. See *Hollingsworth v. Thompson, supra,* and cases cited. "Imperative reasons of public policy require that the authenticity of laws should rest upon public memorials of the most permanent character." See *State v. Smith,* 44 O. St., 348, 7 N. E. Rep., 449, 12 N. E. Rep., 829. The engrossed bill is not such matter of care and record in the proceedings that it should be received to impeach the statements of the properly authenticated records of the acts of the legislature. See *In re Granger, supra; Divison of Howard County,* 15 Kan., 194. There was no competent evidence to show an error in the amounts of the appropriation as they appeared in the enrolled bill, and we may add that if the engrossed bill had been competent evidence, it would not, in connection with the journals, have affirmatively and plainly proved that there was an error in the enrolled bill. It would but have raised a doubt, to solve which against the enrolled bill would have called for further evidence. It follows that the judgment of the district court will be

AFFIRMED.

NORVAL, J., dissenting.