STATE, EX REL. JOHN M. McCLAY, RELATOR, V. JOHN H. MICKEY, GOVERNOR, RESPONDENT.

FILED FEBRUARY 22, 1905.    No. 13,408.

1. **Laws:** AUTHENTICATION. A law cannot be established by the certificates of the clerical officers of the senate and house of representatives, made after the adjournment of the legislature, *sine die*, for the purpose of authenticating a purported act as one having been duly passed by the legislative branch of government.

2. ————: ENACTMENT. The bill herein considered, not being authenticated by the signature of the presiding officer of either branch

of the legislature as required by section 11, article III of the constitution, which provides that "the presiding officer of each house shall sign in the presence of the house over which he presides, while the same is in session and capable of transacting business, all bills and concurrent resolutions passed by the legislature," *held* not to have become a law.

ORIGINAL application for a writ of mandamus to compel respondent to appoint commissioners to select site for monument. *Writ denied.*

*A. W. Lane,* for relator.

*Frank N. Prout, Attorney General,* and *Norris Brown,* contra.

HOLCOMB, C. J.

A writ of mandamus is applied for to require the respondent, the governor, to appoint a commission of five persons whose duty it shall be to supervise the selection of a site on the capitol grounds and the erection of a monument to be dedicated to the memory of the life and public services of President Lincoln. The application is based on what purports to be an act of the legislature which is carried into the laws of 1903, and published as chapter 157 thereof. The governor, we are advised, declines to act through no lack of sympathy for the object sought to be attained, but because of a doubt as to the validity of the law which must be looked to for authority to proceed. The right to the writ prayed for depends, therefore, upon the validity of the enactment referred to. The following certificate made by the secretary of state is found at the close of the printed laws passed by the legislature at its 28th session. Laws 1903, p. 747.

"All of the foregoing laws (except as otherwise noted in connection with the same) are signed and attested as follows, to wit: John H. Mockett, Jr., Speaker of the House of Representatives. Attest: John Wall, Chief Clerk of the House of Representatives. Edmund G. Mc-

Gilton, President of the Senate. Attest: A. R. Keim, Secretary of Senate." There is found attached to chapter 157 (house roll No. 78), the act in question, the following certificates: "I, C. H. Barnard, first assistant chief clerk of the house of representatives of the state of Nebraska, do certify that the copy of house roll No. 78, hereto attached, is a full and correct copy of said house roll No. 78 as passed by the house March 31 by a vote of 60 yeas to 12 nays; that it was transmitted to the senate on the same day, and on April 6 returned from the senate indefinitely postponed. On April 7 it was recalled from the house for further consideration and on the 8th of April transmitted to the house and passed, where, by oversight, the bill failed to be sent to the enrolling room.

"Given under my hand this 14th day of April, A. D. 1903.                                            C. H. BARNARD,
                    *"First Assistant Chief Clerk of the House."*

"STATE OF NEBRASKA, SS:

"I, A. R. Keim, secretary of the senate of the state of Nebraska, do hereby certify that the copy of said house roll No. 78, hereto attached, is a full and correct copy of said house roll No. 78 that was read the third time on the 8th day of April, 1903, and was duly passed by the senate by a vote of 30 yeas to 2 nays, and was thereafter on the same day transmitted to the house of representatives with a certificate attached that the same had been passed by the senate.

"Given under my hand this 14th day of April, 1903.
                                            "A. R. KEIM,
                            *"Secretary of the Senate."*

This bill appears to have been approved by the governor on April 14, 1903. An inspection of the enrolled bills in the office of the secretary of state passed by the legislature at the session mentioned discloses that the only authentication of the act under consideration is to be found in the two certificates above set forth. The bill is in no-

wise authenticated by the signature of either of the presiding officers nor do the names of either or any of the clerical officers of either house appear on said bill as attesting the signatures of the presiding officers. It may also be said that the measure in question does not appear to have the earmarks of being an enrolled bill, such as is customary after the final passage of an act through both branches of the legislature. It is in all probability a copy of the engrossed bill procured at the time it was certified to as above mentioned. The legislature adjourned *sine die* on the 8th day of April, 1903. The question presented, therefore, is whether house roll No. 78, the act in question, has been passed through both branches of the legislature, authenticated and approved with all of the formalities required to give it the force of law.

1. The only evidence of the purported law as being the measure passed by the legislature, and of its due enactment and promulgation by the legislative branch of government, is to be found in the certificates attached to the bill. To be sure, an inspection of the legislative journals discloses that an act entitled the same as the one under consideration was introduced and duly passed through each branch, with amendments; the contents of the bill and the nature of the amendments being otherwise undisclosed. The language of the body of the bill when introduced or as finally passed and after amendment is unascertainable save by resort to what purports to be the bill as finally passed, to which is attached the certificates heretofore quoted or other evidence of an extraneous character. These certificates, it will be observed, were made and attached to the purported bill after the final adjournment of the legislature. They are no part of the proceedings of either branch and are not to be found in the journals of the legislative body. They were not made by those executing them as any part of the action taken by either of said bodies. As evidence these certificates, it would seem, possess no greater value than would the sworn testimony of the parties making them. We are

then brought face to face with the proposition of whether evidence outside of the enrolled bills and the legislative journals may be resorted to for the purpose of establishing that a particular bill has duly passed both branches of the legislature with all the formalities required by the fundamental law, and has been duly authenticated and promulgated so that nothing further is required save action by the executive. In many jurisdictions it is held that the enrolled bill properly authenticated by the signatures of the presiding officers of each branch of the legislature and approved by the governor is the exclusive and only evidence of the due enactment of the measure into law. In this jurisdiction it is held that the enrolled bill may be impeached by the records contained in the legislative journals; but it has not been held that resort may be had to evidence of an extraneous character to prove or disprove the validity of a legislative enactment. In the case of *In re Granger,* 56 Neb. 260, it is held:

"Where from the journals of both branches of the legislature and from the copy of the bill sent to the governor for approval, and by him approved, and which was attested by the proper officers of both houses, it is shown that a certain bill was properly passed, that fact cannot be disproved by the introduction in evidence of what it is agreed between the litigants was the bill originally introduced and memoranda thereon indorsed tending to show that the bill approved and attested was not the one really passed by both houses." In the body of the opinion, quoting approvingly from a case entitled *Division of Howard County,* 15 Kan. 194, it is said: "It will be noticed that the legislative journals and the enrolled bills are the only records required by law to be kept for the purpose of showing any of the legislative proceedings. There is no provision for preserving the engrossed bills as a record of the legislative proceedings. And as the legislative journals and the enrolled bills are, by law, records, and the only records of legislative proceedings, they must of course import absolute verity, and be conclusive proof as to

whether any particular bill has passed the legislature, when it passed, how it passed, and whether it is valid or not. * * * Now as we have before intimated, the enrolled bills and the legislative journals, being records provided for by the constitution, importing absolute verity, we cannot take judicial notice that they are untrue, nor can we even allow evidence to be introduced for the purpose of proving that they are not true. Therefore, as the enrolled bill of the law dividing Howard county, and the journals of the legislature, would seem to prove that said bill has been legally passed by the legislature, and has been legally approved by the governor in the form as it now appears enrolled in the secretary's office, we cannot take judicial notice that said bill was not properly so passed and so approved, and we cannot even allow evidence to be introduced showing that it was not so passed and so approved." Again in *State v. Abbott,* 59 Neb. 106, it is directly held: "The enrolled bill, authenticated by the proper officers of the house, approved by the governor, and filed with the secretary of state, and the journals of the houses are the official records of the proceedings of the legislature relative to the enactment of the law, and are the only competent evidence in a controversy in regard to the due passage of the bill, or in respect to alleged material errors in its substance." In the body of the opinion, the character of the evidence which may be considered in determining whether a law has been duly enacted is thus stated: "The decisions may be classified into those in which the enrolled bill has been deemed conclusive, and those recognizing the doctrine that courts will look back of said bill and examine and consider the journals of the legislature. See 23 Am. & Eng. Ency. Law (1st ed.), 200. In some cases the courts of last resort have approved the reception in evidence of the engrossed bill. See 23 Am. & Eng. Ency. Law (1st ed.), 198; *Berry v. Baltimore & D. P. R. Co.,* 41 Md. 446, 463, 20 Am. Rep. 69; *Hollingsworth v. Thompson,* 45 La. Ann. 222, 12 So. 1. In this state we have not decided the enrolled bill to be

conclusive but have examined the legislative journals. In no case up to the present has the supreme court approved the reception and consideration of anything more or further than we have just stated.   See *Hull v. Miller*, 4 Neb. 503; *Cottrell v. State*, 9 Neb. 125; *Ballou v. Black*, 17 Neb. 389; *State v. McLelland*, 18 Neb. 236; *State v. Robinson*, 20 Neb. 96; *In re Groff*, 21 Neb. 647; *State v. Van Duyn*, 24 Neb. 586; *State v. Moore*, 37 Neb. 13; *In re Granger*, 56 Neb. 260.   In the case last cited the consideration of other evidence than the enrolled bill and the journals was in effect disapproved."

The opinion also discusses the method of procedure in the legislature by which an act is transformed into law, which is of interest in connection with the question under consideration, but which need not here be reiterated.   The prior utterances of this court lead, we think, logically to the conclusion that the only evidence to which recourse may be had in determining whether a bill has been duly enacted into law is the duly authenticated enrolled bill approved by the governor and the legislative journals—the latter only when affirmatively showing that some vital requirement of the fundamental law to the valid enactment of a law has been ignored or disregarded.   Such being  the case, the attempt to establish the law in question by the certificates of the clerical officers of each branch of the legislature made after the final adjournment of the session is unauthorized.   The evidence is incompetent and insufficient for the purpose of showing that the act in question was passed through each branch of the legislature in the manner provided by law, and authenticated in a manner required to give it the sanction and force of law when approved by the governor.   Without the certificates, there is nowhere found any evidence that the purported act, as it is found among the enrolled bills and in the sesion laws, was in the same form in which it was when passed by each branch of the legislature. The identity and authenticity of the measure is in doubt and uncertainty, unless these certificates may be accepted

in lieu of the signatures of the presiding officers provided
for by the constitution. This, in our judgment, cannot
be done, and the certificates must be rejected as com-
petent evidence for the purpose for which offered.

2. It is argued that the enrolled bills signed by the
presiding officers of the legislature are *prima facie* evi-
dence only of their due passage through that body, and
that the governor in approving a measure may from other
sources ascertain whether the act as approved was passed
by the legislature, and that, having approved the measure,
the court will presume that he had sufficient evidence be-
fore him to show that it was the bill passed by the legis-
lature and in the same form as when finally passed. As
we have seen, the enrolled bill and the legislative journals
alone can be looked to in order to establish what the law
is. In support of counsel's contention in this regard, we
are cited to the case of *Cottrell v. State,* 9 Neb. 125. We
think that a careful analysis of the decision in that case
will hardly warrant us in going to the extent we are
asked to go in the case at bar. In the case cited, the bill
under consideration was enrolled and properly signed by
the speaker of the house, and attested by the chief clerk
of that body. The signature only of the presiding officer
of the senate was omitted, the attestation of the secretary
of the senate being attached. It is held the failure of the
presiding officer of the senate to sign the bill, which the
journal showed to have passed by the constitutional ma-
jority, would not affect the validity of the act. It may be
presumed, say the court, that the governor had sufficient
evidence before him of the passage of the bill at the time
he approved the same. The signature of the presiding
officer of the house identified the bill and authenticated it
as the measure which the legislative journals showed to
have passed by the constitutional majority of votes. There
was evidence contained in the enrolled bill and in the
legislative journals, when considered together, which was
deemed sufficient to warrant the governor in acting on the
bill as the identical measure which the legislature had

acted upon and had passed by the requisite number of affirmative votes. If, therefore, we concede the soundness of the rule announced in the *Cottrell* case, it at once becomes apparent that in the case at bar the rule must be extended much farther in order to uphold the law in question, and this, we are satisfied, we are not warranted in doing. Our inclination is to restrict rather than to enlarge on the rule therein announced. It is quite obvious in the present case that, without the certificates of the clerical officers of the two branches of the legislature to which we have alluded, there is nothing in the bill itself nor in the legislative journals from which it may be said that the amended house roll No. 78, which the journals show to have passed both branches of the legislature by a constitutional majority, is identical with, and contains the same matter as that of the purported act found among the enrolled bills in the office of secretary of state and carried into the laws as chapter 157. There is an essential fact in the chain of evidence wholly wanting in order to authenticate and identify the act in question as having been constitutionally passed by both branches of the legislature, unless recourse be had to evidence outside of the enrolled bill itself and outside the legislative journals.

Section 11, article III of the constitution, is in part as follows: "The presiding officer of each house shall sign in the presence of the house over which he presides, while the same is in session and capable of transacting business, all bills and concurrent resolutions passed by the legislature." The object of this provision of the fundamental law is at once manifest. It is the last act of the legislative branch of government in the promulgation of the laws enacted by that body. It is the mode prescribed by the constitution of authenticating measures which have been enacted into law and await only the action of the executive. It is, in the absence of evidence found in the journals disclosing the contents of a bill and the amendments thereto which are rarely if ever found in the legisla-

22

tive journals, the only evidence of record authenticating the law as finally passed as being the same as that found in the enrolled bill. It is the only evidence which can be received, outside of the legislative journals, to prove that a bill has run the necessary course to become a law. It may be that a bill has been read in each house the requisite number of times, has received the requisite number of votes on its final passage, but until certified by the presiding officers of the two branches of the legislature as provided in the fundamental law, it cannot be promulgated as a law of the state. It lacks the authentication required to establish it as a legal statute. It is wanting in the constitutional evidence of its due and final enactment. The constitutional provision referred to cannot, we think, by any proper rule of construction be held to be merely directory and such as may be altogether disregarded. The affirmative declaration therein found as to the manner in which the due and final passage of an act shall be attested must, we are constrained to say, be construed as a declaration that such authentication is essential to the validity of an act, and without which it cannot be said to have the force of law. In *State v. Kiesewetter,* 45 Ohio St. 254, it is held under a constitutional provision similar to our own that a bill not authenticated by the presiding officers of the legislature does not become a law. Say the court, in discussing both sides of the question:

"On the other hand, the importance of furnishing to the people, sources of information, certain in their character and convenient of access, as to what is, and what is not law, is obvious. All are presumed to know the law, and it is of great interest to each citizen, as well as to the public officer, that there be some authentic record to which he may resort to ascertain certainly and definitely what laws are enacted by the legislature; what control him in the daily transaction of business, and of what, at his peril, he is bound to take notice. Whatever conduces to certainty in this regard, therefore, is of great moment to every person in the state, and no rule of construction

would be wise which leaves so important a matter in doubt or confusion."

To the same effect is *Burritt v. Commissioners of State Contracts*, 120 Ill. 322.

The conclusion deducible from the foregoing is that the act in controversy, for lack of due authentication, has failed to become a valid act of the legislature and is without the force and vitality of law. The act under consideration being inoperative, the writ applied for must be denied, which is accordingly ordered.

WRIT DENIED.