Kavanaugh v. Chandler, Lieutenant Governor, et al.

Lawrence et al. v. Same.

Junction City v. State Highway Commission.

(Decided June 22, 1934.)

LESLIE W. MORRIS, MARION RIDER, and CHENAULT HU-GUELY for appellants.

BAILEY P. WOOTTON, Attorney General, and F. M. BURKE, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The cases present the question whether or not the signature of the presiding officer of the Senate is essential to the enactment of a legislative bill into a law.

The first-styled case relates to House Resolution No. 69 of the General Assembly of the regular 1934 session, authorizing the purchase of a number of copies of a book entitled, "Kentucky Directory, 1934," for the uses and purposes therein set out. The second case relates to House Resolution No. 55 providing for the payment of certain employes of the capitol for extra services rendered during the session. They are brought against Hon. Albert B. Chandler, Lieutenant Governor, and the Auditor of Public Accounts, seeking to compel the former to sign the enrolled resolutions and to have it held that such signature would have the same effect as if the resolutions had been signed in open session of the Senate, and thereupon that the Auditor be required to draw his warrants covering the appropriations, respectively. Both suits went out on demurrers to the petitions, which effectually denied the relief sought.

The third styled suit is brought by the state highway commission, and involves House Bill No. 34 granting to municipalities the right to lay and maintain pipe lines and conduits upon the public highways of the state upon complying with certain provisions. The

prayer of the petition is for a construction of the Constitution pertaining to the situation and for a declaration of rights. The answer admits the facts of the petition, and charges that the bill was duly passed by the Senate and submitted to the Lieutenant Governor for his signature, and that he "unlawfully and arbitrarily and without right capriciously refused to sign said bill when presented to him." The answer claims that the defendant has the right established by the bill to lay and maintain a water line on a certain highway. The judgment, rendered upon the pleadings, is that the bill did not become a law and that the defendant does not have the right claimed under the bill.

The resolutions and bill referred to are published in the Acts of 1934, as chapters 587, 582, and 115, respectively.

The journals of the two houses of the Legislature show that these resolutions and bill were duly passed by the House of Representatives on March 12, 1934, and on the same day were reported to the Senate and given their first reading. Following the third reading, they were duly passed by that body on March 15th. Regular procedure was followed, and the enrolled instruments, after having been signed by the Speaker of the House, were returned to the Senate, and the course prescribed in section 56 of the Constitution was observed. But the Lieutenant Governor refused to sign them, and caused to be entered on the journal, "Lieutenant Governor refused to sign." Proceeding as though they had been signed, they were presented to the Governor, who, in due time, approved, signed, and transmitted them to the Secretary of State as the custodian of the laws.

We are informed that the signature of the Lieutenant Governor was withheld because of his opinion that the resolutions and bill had not become laws, since they were given their first reading in the Senate on the same day they were passed in the House. Section 46 of the Constitution provides that "Every bill shall be read at length on three different days in each house. * * *" While the requirement that the reading of the bills shall be on different days is mandatory, we do not construe the provision to prevent the first reading of a

bill in one house on the day it was passed in the other, for the reading in each body is independent of and without reference to the other. The purpose is to secure caution and deliberation in each house. The bill passes from the consideration of the house in which it originates when it is delivered to the other body, and we can conceive of no reason why it should not be presented on the same day. Such is the uniform construction of similar provisions. Cooley's Constitutional Limitations, p. 288; 59 C. J. 551; Skipper v. Street Improvement District, 144 Ark. 38, 221 S. W. 866; Chicot County v. Davies, 40 Ark. 200; State v. Persica, 130 Tenn. 48, 168 S. W. 1056; Smith v. Mitchell, 69 W. Va. 481, 72 S. E. 755, Ann. Cas. 1913B, 588. The opinion of the presiding officer, therefore, seems to have been an erroneous one.

For convenient consideration, we quote section 56 of the Constitution in full:

"No bill shall become a law until the same shall have been signed by the presiding officer of each of the two houses in open session; and before such officer shall have affixed his signature to any bill, he shall suspend all other business, declare that such bill will now be read, and that he will sign the same to the end that it may become a law. The bill shall then be read at length and compared; and, if correctly enrolled, he shall, in presence of the house in open session, and before any other business is entertained, affix his signature, which fact shall be noted in the journal, and the bill immediately sent to the other house. When it reaches the other house, the presiding officer thereof shall immediately suspend all other business, announce the reception of the bill, and the same proceeding shall thereupon be observed in every respect as in the house in which it was first signed. And thereupon the clerk of the latter house shall immediately present the same to the governor for his signature and approval."

The interpretation of that section of the Constitution involved in the case at bar was before the court in Hamlett v. McCreary, 153 Ky. 755, 156 S. W. 410, 411, and it was held that the failure of the presiding officer of the Senate to sign a bill prevented it from

becoming a law. The facts in the two cases are the same, except that the omission of the Lieutenant Governor to sign the bill in the Hamlett Case appears to have been an inadvertence, and the bill was not approved by the Governor, as here. The imperious character of the demand of the Constitution was thus declared in that case:

"This language is express, sweeping, and mandatory. It provides, in express terms, that no bill shall become a law until the same shall have been signed by the presiding officer of each of the two houses in open session, and after certain specified and formal prerequisites shall have been complied with."

The opinion refers to cases from Kansas and one from Nebraska holding that the failure of the president of the Senate to sign a bill does not invalidate it. But it is pointed out that the Constitutions of those two states were only declaratory in this respect, and did not provide, as does ours, that "No bill shall become a law until the same shall have been signed by the presiding officer of each of the two houses in open session." Cases from Nevada, North Carolina, Missouri, Ohio, and Illinois, in which the constitutional provisions are similar to those of our own, or perhaps less mandatory in expression, were cited and quoted from to sustain the conclusion that a bill not signed by the presiding officers of both houses never becomes a law and that the signing of the bill by those officers as designated in the Constitution is absolutely essential to its existence as a law

A further difference noted in the Hamlett Case from Cottrell v. State, 9 Neb. 129, 1 N. W. 1008, was that the Governor of Kentucky had ignored the bill and not signed it, while in the Nebraska case the bill had been approved by the Governor and that fact was taken into consideration by the Nebraska court as evidence of its authenticity. Notice may be taken here that in the later case of State v. Mickey, 73 Neb. 281, 102 N. W. 679, 119 Am. St. Rep. 894, the Nebraska court expressed doubt of the soundness of its opinion in the Cottrell Case and stated its inclination was to restrict the rule therein announced and did not follow it. However, without reference to the second opinion, the rule in the

former one was applied in State v. Missouri Pacific Ry. Co., 100 Neb. 700, 161 N. W. 270, L. R. A. 1918E, 346.

As stated, the Governor approved the bills under consideration here. We cannot see that such act gives rise to any legal distinction, for in this state a failure to veto within the prescribed time has the same effect as a formal approval, so the act of the exçutive cannot be regarded as one of authentication. Section 88, Constitution. Certainly, his approval cannot take the place of the subscription of the respective presiding officers of the Legislature, which is made a condition sine qua non by the Constitution.

Authorities sustaining the interpretation and giving it force, which are not noted in the Hamlett Case, are Lewis' Sutherland Statutory Construction, sec. 56; 12 C. J. 740; 59 C. J. 590; 26 Am. & Eng. Enc. of Law, 545; Wrought Iron Range Company v. Carver, 118 N. C. 328, 24 S. E. 352; Amos v. Gunn, 84 Fla. 285, 94 So. 615; Holman v. Pabst (Tex. Civ. App.) 27 S. W. (2d) 340; State ex rel. Hammond v. Lynch, 169 Iowa, 148, 151 N. W. 81, L. R. A. 1915D, 119; Western Union Tel. Co. v. Taggart, 141 Ind. 281, 40 N. E. 1051, 60 L. R. A. 671; Legg v. Mayor, etc., of City of Annapolis, 42 Md. 203; Jones v. Hutchinson, 43 Ala. 721.

It is argued that in our government no arbitrary power exists in any man thus to destroy inherent rights of the people as may be manifested by the declared purposes of the Legislature. Alarm is expressed that the affirmance of the judgments will confirm such power in the presiding officer of either body of the Legislature to thwart the will of the General Assembly by refusing arbitrarily or under an erroneous conception of duty, or by negligently omitting to sign a bill duly passed. If that be the inevitable result, the responsibility would rest upon the provisions of the Constitution or the error or wrongdoing of the officer. Whether the requirement is wise or unwise is not a matter of concern either of the Legislature or the judiciary. It is not for either of us to criticize. It is our common obligation to recognize. We may not by our ipse dixit ascribe a meaning different from what is so emphatic and clear.

It is said that for every wrong there is a remedy. The immediate remedy would seem to lie in the body

over which the officer is presiding. He is but its agent. Section 83 of the Constitution makes the Lieutenant Governor, by virtue of his office, the president of the Senate, and section 85 provides for the election of a president pro tempore. He may sign bills as the presiding officer. Robertson v. State, 130 Ala. 164, 30 So. 494; 9 Jefferson's Complete Works, p. 17. Doubtless if the conditions should be that such relief is not then and there available, the processes of the courts could be invoked, for, since the Constitution peremptorily directs that the officer shall sign the bills under the conditions specified, he has no discretion and his act is ministerial in character. It is familiar law that the courts may mandatorily require a public officer to perform his duty. Civil Code of Practice, sec. 477. We have so held in relation to the executive. Traynor v. Beckham, 116 Ky. 13, 74 S. W. 1105, 76 S. W. 844, 3 Ann. Cas. 388; McCreary, Governor, v. Williams, 153 Ky. 49, 154 S. W. 417. And it is no usurpation of legislative powers or an invasion of the functions of that independent branch of the government for the court to compel its officers to perform a duty imposed by the law upon them where the element of discretion does not enter. 18 R. C. L. 187; State v. Bolte, 151 Mo. 362, 52 S. W. 262, 74 Am. St. Rep. 537; Ex parte Pickett, 24 Ala. 91; Capito v. Topping, 65 W. Va. 587, 64 S. E. 845, 22 L. R. A. (N. S.) 1089. As is disclosed in 18 R. C. L. 188, and 38 C. J. 688, this power of the court extends to the presiding officers of the legislative bodies no less than to subordinate ones.

That is the remedy now sought at the hands of the courts. Coupled with the requirement of signing by the presiding officer are the conditions under which it must be done, namely, with certain formalities while the body is in open session. It would appear obvious that it must be done at the session or term of the General Assembly at which the bill was passed. When the 1934 session adjourned sine die, all pending measures died with the session. There are insuperable difficulties, readily apparent, why the signature of the Lieutenant Governor at this late date could not breathe the breath of life into the bills and transform them into living laws, either at his pleasure or under orders of the court. Scarborough v. Robinson, 81 N. C. 409; Fox v. Harris, 79 W. Va. 419, 91 S. E. 209; State v. Ryan, 123 Kan.

767, 256 P. 811. The duty sought to be enforced by mandamus must be a duty which still exists when the application for the writ is made. 18 R. C. L. 118; United States v. Lamont, 155 U. S. 303, 15 S. Ct. 98, 39 L. Ed. 160.

The trial court correctly adjudged that, as the mode prescribed by the Constitution was not observed, the bills do not have the prerequisite impress of legislative sanction, the measures are wanting in the constitutional essentials of due enactment and do not have the force of law, and, further, that he properly withheld the coercive powers of the court, for the objective was futile, the Legislature having finally adjourned.

The judgments are affirmed.

Whole court sitting.